**WILLIAMS INDUSTRIES, Petitioner,**

v.

**STATE BOARD OF TAX COMMISSION-ERS, and Jennifer Maher, Hearing Officer for the State Board of Tax Commissioners, Respondents.**

No. 49T10–9206–TA–00041.

Tax Court of Indiana.

March 30, 1995.

Curtis J. Dickinson, Dickinson & Associates, Indianapolis, Jeffrey S. Bate, Bate, Harrold & Meltzer, Shelbyville, for petitioner.

Pamela Carter, Atty. Gen., Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondents.

FISHER, Judge.

Williams Industries (Williams) appeals a final determination of the State Board of Tax Commissioners (the State Board), assessing Williams's real property for the March 1, 1991, assessment. The sole issue for the court's review is whether the State Board abused its discretion in refusing to grant Williams's Form 130/131 Petitions for Review of Assessment.

## FACTS AND PROCEDURAL HISTORY

Williams owns two parcels of commercial property in Whitley County, Indiana (parcel 1 and parcel 2). After the 1989 general reassessment, Williams received a Form 11 Notice of Assessment for each parcel. *Petitioner's Exhibits 1 and 2.* In March 1992, Williams received a tax bill on each parcel for tax year 1991. The tax bills indicated that each parcel's 1989 general reassessment values had been carried forward to 1991.[1]

---

1. During the 1989 general reassessment, however, a building located on parcel 2 was inadvertently assessed to parcel 1. The mistake was subsequently corrected at the local level by adding the value of the building to parcel 2 and subtracting the value from parcel 1. *Respondent's Post–Trial Brief* (filed Nov. 10, 1994) at 2. Apparently, these corrected 1989 values were the

On April 22, 1992, Williams, by its attorney-in-fact, Landmark Appraisals, filed two Form 130 Petitions for Review of Assessment with the Whitley County Auditor (Auditor), contending that the 1991 tax bills were too high. More specifically, Williams maintained that, in 1991, its property was entitled to a deduction for a "kit" building as well as an obsolescence adjustment. Consequently, Williams further maintained that its 1989 general reassessment values no longer reflected the parcels' proper values and, therefore, the 1989 general reassessment values should not have been carried forward to 1991.

In a letter dated April 22, 1992, the Auditor rejected Williams's Forms 130, explaining that since Williams had failed to file its Forms 130 within the statutorily prescribed period, the Form 130/131 method of review was no longer available. *See Stipulation of Facts* (filed March 3, 1993) at 2. The Auditor did, however, inform Williams that it could still seek review of its 1991 assessment by filing two Forms 134 Petition for Reassessment with the State Board. The Auditor included two Form 134 petitions and instructions for filing them in her letter to Williams.

Notwithstanding the Auditor's instruction to file two Forms 134, Williams filed a Form 131 Petition for Review of Assessment for each parcel with the Auditor on April 29, 1992, to be forwarded to the State Board. In a letter dated May 8, 1992, State Board hearing officer Jennifer Maher rejected Williams's Forms 131, stating:

> The # 131 petitions in question were not able to be filed due to the fact the taxpayer had received Form 11s at the time of the last reassessment in 1989. The taxpayer had also paid taxes since that time and there have been no changes made to the building to warrant a new Form 11. The only time the tax bill can be used as a notice is if a Form 11 had not been sent at reassessment time and if they had made

any changes and a Form 11 had not been sent at the appropriate time....

*Stipulation of Facts* at 3.

Williams now appeals to this court. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ The State Board is accorded great deference when it acts within the scope of its authority. *Mahan v. State Bd. of Tax Comm'rs* (1993), Ind. Tax, 622 N.E.2d 1058, 1061. Thus, "the court will reverse the State Board's final determination only when it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary or capricious." *Id.*

## *DISCUSSION AND ANALYSIS*

In 1989, a general reassessment of all the property in Indiana took effect. IND. CODE 6–1.1–4–4(a) (prior to amendment by P.L. 332–1989, § 3). The next general reassessment will take effect in 1995. *Id.* (as amended by P.L. 332–1989, § 3). Thus, the property values assigned in the 1989 general reassessment are carried forward from year to year until the next general reassessment takes effect. *See id.* Nevertheless, assessing officials may assess or reassess real property between general reassessments. IND. CODE 6–1.1–4–30. Interim assessments are made to reflect changes to the property which may increase or decrease its general reassessment value. *See* IND. CODE 6–1.1–4–25.

A taxpayer must receive notice [2] of her property's value in both the year a general reassessment takes effect, as well as in any year in which an interim assessment is made. IND. CODE 6–1.1–4–22. This notice serves to "trigger" a taxpayer's right to challenge the reassessment or assessment if she believes it to be erroneous. *See* I.C. 6–1.1–15–1. If, however, a taxpayer does not receive notice for a year in which a general reassessment takes effect or in which an interim assessment is made, her annual tax bill con-

---

values carried forward to 1990 and 1991. *See Petitioner's Post–Trial Reply Brief* (filed Dec. 15, 1994) at 3. *See also Transcript* at 18, 37–38.

2. The State Board has adopted the Form 11 as its Notice of Assessment form. *Transcript* at 62–63.

stitutes notice for the purposes of triggering her right to challenge her assessment. IND. CODE 6–1.1–15–13. When no changes occur to the property to affect its general reassessment value, the general reassessment values are merely carried over. As a result, the taxpayer receives a tax bill only, which indicates the net value of the property and the amount of tax due.

The issue in dispute today is what methods of relief are available to a taxpayer wishing to challenge an unchanged assessment in a non-general reassessment year. Williams contends that a taxpayer may pursue Form 130/131 relief in a non-general reassessment year upon receipt of either a Form 11 or a tax bill. Williams explains that it pursued the Form 130/131 relief upon receipt of its tax bill for alternative reasons:

> First ... Williams'[s] real property was assessed [in 1991] ... and thus, Williams was entitled to official notice which it never received. Alternatively, Williams was not reassessed when it should have been, and the first notice of the assessor's failure to perform a timely reassessment of the property was upon Williams'[s] receipt of its annual tax bill. For either reason, Williams is entitled to Form 130/131 review because notice was required and not sent, and because the Form 130/131 review was filed within 30 days of Williams'[s] receipt of its tax bill.

*Petitioner's Post–Trial Brief* at 2. The court will now address each of Williams's reasons in turn.

### A. WILLIAMS'S PROPERTY WAS "ASSESSED" IN 1991.

Williams maintains that "[t]he assessor actually assessed Williams'[s] real property [in 1991] in order to determine that changes in the existing assessment should not be made; therefore, [Form 11] notice was required." *Petitioner's Post–Trial Brief* at 6. Furthermore, Williams contends that because local assessors have the duty to keep assessments current under I.C. 6–1.1–4–25, the Whitley County Assessor neglected her duty when she did not make adjustments for changes that occurred in the property in 1991, merely

carrying the 1989 general reassessment values forward to 1991. *Transcript* at 18.

■ First, Williams confuses the actual valuing of property with the ministerial functions of maintaining real property record cards, tax rolls, abstracts, and issuing annual tax bills. Indeed, Williams's property was not "assessed" in 1991 in the sense that the property was visually inspected as it was in 1989. Consequently, no new value was assigned to Williams's property for 1991. In 1992, Williams received a tax bill for the 1991 "assessment" which merely indicated the property's 1989 "assessed" value.

■ Second, while local assessors are duty bound to keep assessments current, I.C. 6–1.1–4–25, they are not bestowed with omniscient powers. Accordingly, assessors cannot intuitively know every property change that occurs within their jurisdiction in any given year. Assessors must therefore rely, in part, on property owners to keep abreast of changes occurring to the owners' respective properties. Indeed, assessors will typically make interim assessments upon the filing of building permits, or petitions for review, by the property owners. *See Transcript* at 59.

In the context of personal property assessment, our Supreme Court has previously stated: "[i]t is utterly unrealistic to expect every tax assessor to be on the premises of every taxpayer on precisely the first day of March every year to make an independent determination of what taxable property is on the premises at that specific time." *South Shore Marina, Inc. v. State Bd. of Tax Comm'rs* (1989), Ind., 543 N.E.2d 644, 645. Likewise, this court holds that it is just as unrealistic to expect assessors to intuitively know of every change on every parcel of real property in every year between general reassessments.

### B. METHODS OF REVIEW

Prior to January 1, 1994, a taxpayer wishing to challenge her property's value had three methods available to her: 1) the Form 130/131 Petitions for Review of Assessment method; 2) the Form 134 Petition for Reassessment method; and 3) the Form 133 Peti-

tion for Correction of Error method.[3] Under the first method, a taxpayer could file a Form 130 petition within 30 days after notice was given to her of the assessing official's action (i.e. Form 11, or the tax bill if the taxpayer should have received a Form 11). IND.CODE 6–1.1–15–1(a). The Form 130 allowed a taxpayer to seek review of both the local assessor's objective and subjective determinations by the county board of review for the entire four year period the general reassessment was effective. IND.CODE 6–1.1–15–1(a); 50 I.A.C. 4.1–1–11 (repealed, now 50 I.A.C. 4.2–3–3). *See also Reams v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 620 N.E.2d 758, 760. If the taxpayer was dissatisfied with the county board of review's disposition of the Form 130, the taxpayer could appeal to the State Board by filing a Form 131 petition. IND.CODE 6–1.1–15–3(e); 50 I.A.C. 4.1–1–11 (repealed, now 50 I.A.C. 4.2–3–3). The taxpayer was required to file her Form 131 within thirty (30) days after the county board gave notice of its action on the Form 130. I.C. 6–1.1–15–3(c); 50 I.A.C. 4.1–1–11 (repealed, now 50 I.A.C. 4.2–3–3). If the taxpayer missed the thirty day post-notice deadline for filing her Form 130, the Form 130/131 review process was no longer available. *Reams,* 620 N.E.2d at 759.

"Because actions requiring notice do not occur every year, the Form 130/131 review process is not automatically applicable to every year." *Id.* at 760. Consequently, the second method of relief a taxpayer could pursue was to file a Form 134 petition with the State Board "on or before March 31st of any year which [wa]s not a year in which a general reassessment of real property bec[a]me[ ] effective." *Id.;* I.C. 6–1.1–4–7 (repealed, P.L. 41–1993, § 54). Like the Form 130/131 petitions, the Form 134 offered relief for both objective and subjective errors. *Id.; Reams,* 620 N.E.2d at 760. The

relief provided by Form 134, however, was prospective only. *Id.; see also* I.C. 6–1.1–4–7 (repealed, P.L. 41–1993, § 54). In effect then, the Form 134 enabled the taxpayer to notify the assessor that a property change had occurred, and therefore the general reassessment should be adjusted.

The third and final method of relief available to a taxpayer prior to 1994 was to file a Form 133 petition. IND.CODE 6–1.1–15–12. The Form 133, however, could only be used to correct definite or objective errors in the assessment. *Hatcher v. State Bd. of Tax Comm'rs* (1990), Ind.Tax, 561 N.E.2d 852, 857. *See also* 50 I.A.C. 4.1–4–14 (repealed, now 50 I.A.C. 4.2–3–12). Indeed, the Form 133 could not be used to correct subjective judgments or challenge the method by which an assessment was generated. *Hatcher,* 561 N.E.2d at 857.

Turning to the facts in this case, Williams received a Form 11 on each of its two parcels for the 1989 general reassessment. No evidence was presented at trial that the assessor had knowledge of any changes occurring to Williams's property between March 1, 1990, and March 1, 1991. Consequently, no interim assessment was made, no new Forms 11 were issued, and Williams's 1989 general reassessment values were merely carried forward to the 1990 and 1991 tax bills. Williams, believing the 1991 tax bills to be erroneous, filed a Form 130 with the Whitley County Auditor on April 22, 1992, for each parcel alleging that 1989 general reassessment values no longer reflected the property's current value. Specifically, Williams maintains that both parcels received inadequate obsolescence adjustments and that parcel 2's assessment was not adjusted to reflect a deduction for a "kit" building pursuant to State Board Instructional Bulletin 91–8.[4]

---

**3.** The Form 130/131 and Form 133 methods of review are still available today. The Form 134 method of review, however, codified under I.C. 6–1.1–4–7 and 6–1.1–4–8, was repealed effective January 1, 1994. P.L. 41–1993, § 54. The repeal has, in effect, incorporated the Form 134 process into the Form 130/131 process under I.C. 6–1.1–15–1 through 6–1.1–15–4. Consequently, the Form 134 cannot be used to challenge a property's value after December 31, 1993. Beginning in 1994 then, a taxpayer merely has file a Form 130, in any year, within 45 days of receipt of a Form 11 or by May 10 of that year, whichever is later. *See* P.L. 41–1993, § 11.

**4.** In October 1991, the State Board issued Instructional Bulletin 91–8, which permitted a 50 percent reduction in basis for kit buildings. The reductions were retroactively effective March 1, 1991. On August 28, 1992, the State Board issued Instructional Bulletin 92–1 instructing lo-

While a taxpayer has the right to challenge her property's value, she must also bear the responsibilities that are attached to that right. Indeed, because the legislature has created specific appeal procedures by which to challenge assessments, a taxpayer must comply with the statutory requirements of filing the proper petitions within a timely manner. *See Reams,* 620 N.E.2d at 760, 761.

The Form 130/131 method of review is used to challenge a reassessment or change in assessment. *See* I.C. 6–1.1–15–1 through 6–1.1–15–4. What Williams is challenging today, however, is an unchanged assessment. In other words, Williams is claiming that a change should have been made to its 1989 general reassessment values for the 1991 tax year. The proper method to effect a review of an unchanged assessment, prior to 1994, was to file a Form 134 before March 31st. *See* I.C. 6–1.1–4–7 (repealed, P.L. 41–1993, § 54). Thus, Williams should have filed a Form 134 before March 31, 1991, notifying the assessor of any changes in its property that Williams believed warranted an adjustment in its 1989 general reassessment value. It did not. Williams cannot now seek relief from this court because it failed to follow the statutorily prescribed review methods and deadlines.

## CONCLUSION

Prior to 1994, a taxpayer who wished to challenge an *unchanged* assessment in a non-general reassessment year was required to file a Form 134. Williams, however, improperly pursued the Form 130/131 method of review. IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of the State Board of Tax Commissioners and against Williams Industries.

---

cal assessors to reduce the basis for kit buildings by 50 percent for tax years 1991 on.

Consequently, the Whitley County Assessor prepared a petition for correction of errors (Form 133) for Williams in 1992, which reduced the value of Williams's kit building by 50 percent for 1991 forward. *Respondent's Exhibit C.* Likewise, the Whitley County Assessor prepared for Williams a claim for refund so that taxes could be refunded as a result of the reduced value of the kit building. *Petitioner's Exhibit 14.* Williams (through Landmark Appraisals), however, declined the relief. *Petitioner's Exhibit 15.* Consequently, the court will not now award such relief to Williams.