The KENT CO., Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

No. 49T10–9411–TA–00270.

Tax Court of Indiana.

Oct. 20, 1997.

Curtis J. Dickinson, Dickinson & Abel, Indianapolis, for petitioner.

Jeffrey A. Modisett, Attorney General, Marilyn S. Meighen, Deputy Attorney General, Indianapolis, for respondent.

FISHER, Judge.

The Kent Company (Kent) filed this original tax appeal on November 30, 1994 in the absence of a final determination of the State Board of Tax Commissioners (State Board).[1] Both Kent and the State Board have moved for partial summary judgment. At issue is whether this Court may entertain Kent's challenge to the assessed value of its real property for 1990, 1991, and 1992.

### FACTS AND PROCEDURAL HISTORY

Kent owns real property in Elkhart, Indiana. Kent's real property was assessed during the 1989 general assessment. Kent disagreed with the assessment of its property and filed a Petition for Review of Assessment[2] (Form 130) with the Elkhart County Board of Review (BOR). The BOR held a hearing on the matter and issued a final assessment determination on July 12, 1990. Kent disagreed with the BOR and filed a Petition for Review of Assessment[3] (Form 131) with the State Board. On November 6, 1992, the State Board issued its final determination, lowering Kent's assessment by $457,900. Kent did not appeal that determination to this Court.

During the pendency of the disposition of Kent's petitions for review, Kent paid prop-

---

1. *See* IND.CODE ANN. § 6–1.1–15–4(e) (West 1989) (amended 1995); *Herb v. State Bd. of Tax Comm'rs,* 656 N.E.2d 890, 891 (Ind.Tax Ct.1995). Subsection 4(e) allows a taxpayer to initiate an original tax appeal in this Court where the State Board fails to issue a final determination "within twelve (12) months after the state board receives a petition for review in a nonreassessment year and twenty-four (24) months in a reassessment year...."

2. *See* IND.CODE ANN. § 6–1.1–15–1 (West 1989) (amended 1993); IND.ADMIN.CODE tit. 50, r. 4.2–3–3 (1996).

3. *See* IND.CODE ANN. § 6–1.1–15–3 (West 1989) (amended 1993); IND ADMIN.CODE tit. 50, r. 4.2–3–3.

erty taxes based on the 1988 assessed value of its property for the 1989 through 1992 tax years. *See* IND.CODE ANN. § 6–1.1–15–10(a)(2) (West 1989) (amended 1995). After the State Board issued its final determination, the Elkhart County Treasurer sent Kent revised tax bills for the tax years in issue in April of 1993. The revised tax bills stated a total tax liability higher than the initial tax bills, which were based on the 1988 assessed value. Upon receipt of the revised bills, Kent filed a Form 130 petition for each tax year in issue with the BOR alleging errors in the assessment and improper notice in April and May of 1993. The BOR denied these petitions as untimely filed on June 24, 1993. Kent then filed a Form 131 petition for each tax year in issue with the State Board on July 1, 1993 making the same allegations. The State Board took no action for over twelve months. Kent then filed this original tax appeal.

## ANALYSIS AND OPINION
### Standard of Review

The parties in this case have filed cross motions for partial summary judgment. Summary judgment is appropriate only where no genuine issues of material fact exist and a party is entitled to judgment as a matter of law. IND.TRIAL RULE 56(C). Cross motions for summary judgment do not alter this standard. *Roehl Transp., Inc. v. Department of State Revenue*, 653 N.E.2d 539, 541 (Ind.Tax Ct.1995).

### Discussion

Kent challenges the increase in its tax liability for the tax years in issue. Kent argues that the initial tax bills (i.e., those based on the 1988 assessment) for the tax years in issue "reflect[ed] the State Board's assessment for [each] year as opposed to the 1988 assessment." (Petr's Mem. Supp. Summ. J. at 9). Therefore, as Kent would have it, the upward revision of Kent's tax liability based upon the State Board's final determination of the 1989 assessment constituted a sua sponte increase in assessment. *See* IND.CODE ANN. § 6–1.1–14–10 (West

1989) (authority of State Board to sua sponte increase assessment); § 6–1.1–9–1 (West 1989) (authority of lower taxation officials to sua sponte increase assessment) (amended 1993). *See also id.* § 6–1.1–13–3. According to Kent, this increase in assessment was done without notice and an opportunity for a hearing and was also not timely, thus making the increase void. *See id.* §§ 6–1.1–14–11, 6–1.1–9–4 (requiring notice, an opportunity for a hearing, as well as providing a three-year limitations period for a sua sponte increase in assessment); *Mills v. State Bd. of Tax Comm'rs*, 639 N.E.2d 698, 703 (Ind.Tax Ct.1994). Thus, in Kent's view, Kent could properly initiate the Form 130/131 process for each of the tax years at issue. *See* IND.CODE ANN. § 6–1.1–15–1(a) (giving taxpayers right to petition for review of assessments or increases in assessments) (amended 1993).

In each of the Form 130/131 petitions at issue in this case, Kent makes two claims: 1) that there was an error in the 1989 assessment, and 2) that improper notice of an assessment increase was given. (In its original tax appeal, Kent also makes the claim that the 1989 assessment violated 42 U.S.C. § 1983 and article X, § 1 of the Indiana Constitution.) These are two distinct challenges to the increase of its tax liability. The first necessarily assumes that the issue of the 1989 assessment value is still open with respect to the years in issue. The second challenge, if successful, would make any increase of Kent's tax liability for the years in issue void, thereby rendering Kent's claim of error in the 1989 assessment moot. Both of these challenges will be addressed in turn.

#### I. KENT'S CHALLENGE TO THE 1989 ASSESSMENT

In this case, Kent initiated the Form 130/131 process in response to the 1989 assessment of its property. On November 6, 1992, the State Board issued its final determination. Kent chose not to appeal that determination to this Court.[4] *See* IND.CODE ANN. § 6–1.1–15–5(b) (West Supp.1997).

---

4. Kent concedes that its tax liability for 1989 was finally determined by the State Board and that it may not challenge that liability in this Court.

Kent now seeks to challenge the 1989 assessment as it applies to the tax years in issue.

An examination of the law as it stood when Kent filed its second round of Form 130/131 petitions is helpful. Prior to January 1, 1994, there were three avenues for taxpayers to challenge their property's assessed value. Within thirty days of an assessment or increase of assessment, the taxpayer could initiate the Form 130/131 process alleging both objective and subjective errors in the assessment; by March 31st of years in which there was no state-wide general assessment, the taxpayer could file a Form 134 Petition for Reassessment alleging objective or subjective errors in the assessment;[5] lastly, a taxpayer could file a Form 133 challenging only objective errors in the assessment. *See Bender v. State Bd. of Tax Comm'rs*, 676 N.E.2d 1113, 1114 (Ind.Tax Ct.1997).

■ The law is well-settled that a taxpayer challenging a property assessment must use the appropriate means of doing so. *See Franchise Realty Corp. v. State Bd. of Tax Comm'rs*, 682 N.E.2d 832, 833 (Ind.Tax Ct.1997); *Bender*, 676 N.E.2d at 1114 (Ind. Tax Ct.1997); *Williams Indus. v. State Bd. of Tax Comm'rs*, 648 N.E.2d 713, 718 (Ind. Tax Ct.1995); *Reams v. State Bd. of Tax Comm'rs*, 620 N.E.2d 758, 760–61 (Ind.Tax Ct.1993). If a taxpayer fails to use the appropriate means for challenging an assessment, the taxpayer may not seek relief in this Court. *See Williams*, 648 N.E.2d at 718. Kent filed the second round of petitions years after receiving notice of the 1989 assessment. Therefore, the time for Kent to assert error in the 1989 assessment as it applied to the tax years in issue by way of the Form 130/131 process had long passed.

This is so notwithstanding the fact that Kent was challenging the 1989 assessment as it applied to the 1990, 1991, and 1992 tax years. In Indiana, property is not normally assessed every year. Rather, as the law stands today, there is a general state-wide assessment of property every four years.[6] *See* IND.CODE ANN. § 6–1.1–4–4(a) (West Supp.1997). In this general assessment, property is given an assessed value. This value remains the assessed value of the property for the succeeding tax years until the next general assessment, *see Williams*, 648 N.E.2d at 715, unless the taxing authorities affirmatively act to reassess the property for the interim years between assessments. *See* IND.CODE ANN. §§ 6–1.1–4–25, –30 (West 1989); *Joyce Sportswear Co. v. State Bd. of Tax Comm'rs*, 684 N.E.2d 1189, 1191 (Ind. Tax Ct.1997).

The ministerial function of carrying forward the assessment to the following year does not trigger a taxpayer's right to initiate the Form 130/131 process. *See Williams*, 648 N.E.2d at 718; *see also Reams*, 620 N.E.2d at 760 ("Because actions requiring notice do not occur every year, the Form 130/131 process is not applicable to every year.").[7] Kent therefore did not have the right to initiate the Form 130/131 petitions for the tax years at issue to the extent that they contained allegations that the 1989 assessment was incorrectly done.[8]

What Kent really is seeking to do here is

---

5. The Form 134 method of review, codified at IND.CODE ANN. §§ 6–1.1–4–7, –8 (West 1989), was repealed effective January 1, 1994. *See Williams*, 648 N.E.2d at 717 n. 3. The Form 134 process has been incorporated into the Form 130/131 process. *See* IND.CODE ANN. § 6–1.1–15–1(b) (West Supp.1997).

6. Previously, the period in between general assessments was eight years. *See* IND.CODE ANN. § 6–1.1–4–4(a) (West 1989) (amended 1989). The change in the law does not affect the outcome of this case.

7. *But see supra* note 5. Because the Form 134 process has been incorporated into the Form 130/131 process, a taxpayer may now initiate the Form 130/131 process in each tax year to have the property reassessed. However, this use of the Form 130/131 process will only result in prospective relief.

8. Kent's assertion that "[t]he focus on the 1989 assessment is irrelevant because this Court has repeatedly acknowledged that each tax year stands on its own...." misses the mark. This principle does not affect the rule that the general assessment will carry forward in the absence of a reassessment. Because there was no reassessment in this case, the March 1, 1989 assessment was not only relevant, but controlled the assessed value of the property for the tax years in issue.

collaterally attack the 1989 assessment[9] as it applied to the tax years in issue. The time to assert error in the 1989 assessment as it applied to the tax years in issue in this Court was December 21, 1992 (forty-five days after the final determination by the State Board), see IND.CODE ANN. § 6–1.1–15–5(d)(1) (West Supp.1997). After the forty-five days expired, this Court had no jurisdiction to hear Kent's appeal of the 1989 assessment as applied to the tax years at issue. See IND.CODE ANN. § 33–3–5–11(a) (West 1996). (Of course, Kent's failure to appeal the State Board's final determination did not foreclose Kent's ability to challenge the 1989 assessment as it applied to other years.) Kent cannot confer that jurisdiction by reinitiating the Form 130/131 process and then filing an original tax appeal. Cf. Reams, 620 N.E.2d at 760 (refusing to allow time limitations on Form 130/131 process to be subverted). Therefore, this Court has no jurisdiction to evaluate Kent's assertion that the 1989 assessment was erroneous as applied to the tax years in issue.

It is true that Kent could have filed a Form 134 petition with the State Board challenging the 1989 assessment as it applied to the tax years in issue.[10] It is in this respect that each tax year stands on its own. Prior to January 1, 1994, if a taxpayer missed the Form 130/131 deadline, the taxpayer could not challenge the assessment with respect to the assessment year, but the taxpayer was not stuck with an allegedly erroneous assessment for the entire period between assessments. The taxpayer could file a Form 134 Petition for Reassessment seeking prospec-

tive relief. Even if this Court excused Kent's filing of the Form 130/131 petitions instead of the Form 134 petition (a remedy Kent does not seek), Kent still did not meet the March 31st deadline for filing a Form 134 with the State Board for any of the tax years in issue. Kent filed the Form 130s in April and May of 1993, which was past the due date for filing the Form 134 petition for each tax year.

At first blush, this may seem a harsh result because Kent did not know what its tax liability for 1990, 1991 and 1992 was going to be until it received notice of the State Board's final determination. However, a closer look reveals that there is no injustice here. As time passed, Kent's ultimate tax liability for the tax years at issue was to be decided by the State Board's final determination due to the fact that the 1989 assessment would (in the absence of a reassessment) carry forward to those years. In other words, Kent has already had a State Board hearing with respect to the tax years at issue, and Kent could have appealed the State Board's determination to this Court. Kent chose not to do so. Kent now seeks a second chance to bring this matter before this Court. The law does not provide that second chance.

## II. THE INCREASE IN KENT'S TAX LIABILITY

This Court first evaluates its jurisdiction to hear Kent's claim that the revised tax bills were void. This claim accrued when Kent received the revised tax bills.[11] Kent timely raised this claim with both the BOR and the State Board and then to this Court.[12] Re-

---

**9.** The State Board does not raise the issue of res judicata.

**10.** While Kent's first petition for review was pending, it is unlikely that filing a Form 134 petition with the State Board would have been helpful. In filing the Form 134 petition, Kent would have been alleging errors in the 1989 assessment and seeking prospective relief for the tax years at issue. Because the disposition of Kent's petition for review would have (as the deadlines for the filing of Form 134 petitions for each tax year in issue came) covered the tax years in issue, Kent's Form 134 would have been redundant.

**11.** This conclusion may seem somewhat inconsistent with the rejection of Kent argument that it could initiate the Form 130/131 process alleging

errors in the assessment for the tax years in issue. However, as has been shown, Kent's challenges to its tax liability are analytically distinct. Kent has already had a hearing with the State Board with respect to the 1989 assessment as it applied to the tax years at issue. That hearing did not address Kent's claim that the revised tax bills were void, nor could it have because the claim did not arise until Kent received the revised tax bills.

**12.** Kent could also have filed a Form 133 petition alleging that the tax increase was illegal. See IND.CODE ANN § 6–1.1–15–12(a)(6) (West Supp 1997).

gardless of the merits of the claim,[13] Kent stated a claim arising under the tax laws of Indiana, *see State v. Sproles*, 672 N.E.2d 1353 (Ind.1996), and Kent followed the statutory procedures for raising it in this Court. Therefore, this Court has jurisdiction to review Kent's claim that the revised tax bills are void on the merits.

■ When a taxpayer challenges an assessment or an increase in assessment, "the taxes resulting from the assessment or increase in assessment are ... not due until *after* the petition for review, or appeal, is finally adjudicated and the assessment or increase is finally determined." IND.CODE ANN. § 6–1.1–15–10(a) (West 1989) (emphasis added) (amended 1995). This does not mean that the taxpayer pays no taxes during the pendency of the appeal or review. Rather,

> [t]he amount of taxes which the taxpayer is required to pay, *pending the final determination*, shall be based on: ... (2) an amount based on the immediately preceding year's assessment of real property if an assessment, or increase in assessment, of real property is involved.

*Id.* (emphasis added). Thus, during the taxpayer's challenge to an assessment or increase in assessment, the taxpayer is obligated to pay an amount based on the immediately preceding year's assessment. This obligation does not represent a taxpayer's ultimate tax liability for any particular year at all. During the pendency of an appeal or review, the taxpayer's ultimate tax liability has yet to be determined, and will be based, not on the immediately preceding year's assessment, but on the final determination of assessed value.

In this case, Kent challenged the 1989 assessment of its property. This challenge triggered the operation of section 6–1.1–15–10. Kent was then obligated to pay taxes based on the 1988 assessed value of its property for the 1989 tax year. This amount

represented Kent's provisional liability subject to a revision (either upward or downward) based on the final disposition of Kent's challenge. As time passed, the 1990, 1991, and 1992 taxes accrued and became due. Kent's initial tax bills for those years reflected the 1988 assessment as well.

Kent's position is the initial tax bills constituted an assessment and that the upward revision of those tax bills constituted a sua sponte increase in assessment. In support of its position, Kent argues that the initial tax bills contained the representation that the value used was the assessed value [14] of the property and that the initial tax bills themselves did not state that they were provisional in nature. Coupled with this argument is Kent's complaint that the State Board did not give it notice that the initial tax bills were subject to revision. This, as Kent would have it, is contrary to the statutory protections afforded taxpayers, thus making the revised tax bills void. *See Mills v. State Bd. of Tax Comm'rs*, 639 N.E.2d 698 (Ind. Tax Ct.1994) (where State Board does not adhere to strict notice requirements, it cannot sua sponte increase an assessment).

The State Board argues that the initial tax bills did not constitute an assessment and that they were generated pursuant to section 6–1.1–15–10 and were subject to revision based on the State Board's final determination of the assessed value of Kent's property. In response to the State Board's argument, Kent argues that section 6–1.1–15–10 does not apply to the 1990, 1991, and 1992 tax years. Kent cites *LeSea Broad. Co. v. State Bd. of Tax Comm'rs*, 525 N.E.2d 637 (Ind. Tax Ct.1988). In *LeSea*, this Court construed section 6–1.1–15–10 to require that where property was previously exempt and was subsequently deemed non-exempt, the tax obligation was suspended pending final adjudication of any appeal. *Id.* at 637–638. *LeSea* simply did not address whether section 6–1.1–15–10 applied to taxes accruing in

---

**13.** *See Musgrave v. State Bd. of Tax Comm'rs*, 658 N.E.2d 135, 138 (Ind.Tax Ct.1995) "Subject matter jurisdiction does not depend on the sufficiency of the assertions in the complaint or the petitioner's right to relief. Rather, subject matter jurisdiction depends on whether the type of claim advanced by the petitioner falls within the general scope of authority conferred upon the court by constitution or statute." (citations omitted).

**14.** The tax bills state, "This statement is based on the following Mar. 1 [either 1990, 1991 or 1992] assessed valuation."

succeeding years (i.e., years after the date of the initiation of a petition for review, but prior to the final determination).

The 1989 assessed value of Kent's property carried forward (because there was no intervening reassessment) to the tax years in issue. Kent's ultimate tax liability for those years is to be based on that value. Therefore, any tax for those years "result[ed] from the assessment" that was being reviewed. IND.CODE ANN. § 6–1.1–15–10(a). Because the taxes for the tax years in issue resulted from the 1989 assessment, section 6–1.1–15–10 applied to those years as well.[15] Kent's provisional tax obligation for each of those years was based on the immediately preceding year's assessment. (The 1988 value, in effect, became the immediately preceding year's assessment as that value carried forward.) This obligation was subject to revision based on the State Board's final determination of the assessed value of Kent's property as of March 1, 1989.

The use of the 1988 value to calculate Kent's provisional tax liability did not constitute an assessment; it was merely the statutory means of calculating that provisional liability. Cf. *Williams Indus.*, 648 N.E.2d at 716 (merely carrying forward assessment from immediately preceding tax year not an assessment). Because the use of the 1988 value did not constitute an assessment, the subsequent revision of Kent's tax liability to reflect the State Board's final determination of the assessed value of Kent's property did not constitute a sua sponte increase in assessment.

Because this action was not a sua sponte increase in assessment, the statutory protections (i.e., notice, an opportunity for a hearing and a three-year limitations period) afforded taxpayers in sua sponte assessment increases are not applicable. *See Joyce Sportswear*, 684 N.E.2d at 1192–93 (refusing to extend statutory protections afforded taxpayers in certain procedures to other procedures without statutory authority). Kent's reliance on *Mills,* a case in which the State Board sua sponte increased an assessment, is therefore misplaced. Neither the State Board, nor any other taxation authority was obligated to inform Kent that the initial tax bills were subject to revision based on the State Board's final determination because the upward revision of Kent's tax liability did not require notice.

This should offend no one's sense of justice. It was Kent's petition for review that caused the use of the 1988 assessment for the tax years in issue. Kent therefore cannot be heard to complain that the State Board failed to inform Kent of the operation of section 6–1.1–15–10. Kent may have been surprised by the retroactivity of the State Board's final determination, but any surprise was the result of Kent's ignorance of the relevant law. Moreover, to adopt Kent's position would allow it to escape paying its fair share of the tax burden and give it a windfall to which it is not entitled. Absent a reassessment, Kent's property taxes for the tax years in issue were to be based on the 1989 assessment value, no matter when that value was finally determined.

The State Board finally determined the assessed value of Kent's property as of March 1, 1989, and Kent's failure to appeal that final determination now precludes Kent from challenging the assessment as applied to the tax years in issue in this Court.

## Conclusion

Because this Court has no jurisdiction to entertain any dispute about the validity of the 1989 assessment, this Court DISMISSES this original tax appeal with respect to any and all issues concerning that assessment, including Kent's claims that the Indiana property tax system violates the Indiana Constitution and Kent's claim based on 42 U.S.C. § 1983. On the issue of whether the revised tax bill was void due to lack of notice,

---

15. Kent also points out the fact that the initial tax bills used the then current tax rate and not the 1988 rate for calculating Kent's provisional liability. This fact is not troubling. Section 6–1.1–15–10 does not require that the rate of the immediate preceding year be carried forward, only the assessment value. This makes sense. It is the assessed value that is at issue, not the rate.

this Court holds that the revised tax bill was valid. Therefore, this Court ENTERS summary judgment on behalf of the State Board and DENIES Kent's motion for partial summary judgment.