BARTH, INC., Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

No. 49T10–9701–TA–00086.

Tax Court of Indiana.

Nov. 24, 1998.

---

Tamatha A. Stevens, McMains, Goodin & Orzeske, Indianapolis, Indiana, attorney for petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Indianapolis, Indiana, Kathryn Symmes Kirk, Deputy Attorney General, Indianapolis, Indiana, attorneys for respondent.

## ORDER ON PETITION
## FOR REHEARING

FISHER, J.

In its petition for rehearing, the State Board of Tax Commissioners (State Board) requests that the Court reconsider Part II of its decision in *Barth, Inc. v. State Board of Tax Commissioners,* 699 N.E.2d 800 (Ind. Tax Ct.1998). The Court, being duly advised in the premises, denies the State Board's petition for rehearing for the reasons stated below.

In this case, the State Board denied the kit adjustments to the subject improvements because the subject improvements had already received a grade lower than C. This Court held that this was erroneous and that the State Board was required to examine whether the subject improvements qualified for the kit adjustment. This Court also held that the State Board could adjust the grade of the subject improvements if it determined that the subject improvements qualified for the kit adjustment.

In its petition, the State Board takes issue with this holding. The State Board asks this Court to "adopt as its threshold test for Form 133 challenges requesting kit buildings whether an improvement's grade is lower than C, not whether the building is, in fact, a kit building." (State Bd. Pet. for Reh'g at 8). In the State Board's view, because the subject improvements have already been given a lower grade, they cannot be given a kit adjustment.

The State Board's position is incorrect for a number of reasons, the first of which is the State Board's disregard of Barth's statutory right to assert objective errors in an assessment. Under section 6–1.1–15–12, a taxpayer has the right to have objective errors in an assessment corrected. The qualification of a given improvement for the kit adjustment is an objective determination[1] because the State Board has chosen the Form 133 process for the adjudication of kit adjustment appeals. *See Barth,* 699 N.E.2d at 808 n. 21. Barth therefore has the statutory right to use the Form 133 process to allege that the subject improvements qualify for the kit adjustment. *See Zakutansky v. State Bd. of Tax Comm'rs,* 691 N.E.2d 1365, 1368 (Ind. Tax Ct.1998).

The State Board's arguments to the contrary are unconvincing. The State Board contends that "[w]here the grade of a building is already below a C, the kit adjustment is not objective because it involves analyzing whether the grade assigned is correct." (State Bd. Pet. for Reh'g at 5). This is not the case. The qualification of a given improvement for the kit adjustment does not depend on which grade was assigned to the improvement. The building either is, or is not, a kit building, and an improvement is not made any less of a kit building because an assessing official decided to give it a lower grade.[2]

---

1. In its petition, the State Board states, "Despite the State Board's honest efforts ..., the State Board seems to have failed to create an adjustment that is objective in all cases." (State Bd. Pet. for Reh'g at 4). This admission does not change the relevant law. For all intents and purposes, the qualification of a given improvement for the kit adjustment is an objective determination. *See Barth,* 699 N.E.2d at 804 n. 10

2. Implicit in the State Board's reasoning is the erroneous assumption that the fact that determining the correct assessed value in these cases may require subjective judgment converts the objective inquiry of whether the improvement qualifies for the kit adjustment into a subjective one. The State Board has confused the correction of an error in the assessment with the cor-

The Court acknowledges the State Board's concern about how the grade of an improvement and the kit adjustment interact. However, the State Board's attempt to alleviate this concern by selecting the C grade as the "threshold" grade for allowing kit adjustments through the Form 133 process does not withstand serious analysis. Not all kit buildings are to be given a C grade. *See Componx, Inc. v. State Bd. of Tax Comm'rs,* 683 N.E.2d 1372, 1375 (Ind. Tax Ct.1997). Consequently, some kit buildings will, after the kit adjustment is applied, be given a grade higher than C, and some will be given a grade lower than C. Therefore, where a taxpayer seeks a kit adjustment, and the improvement has already been given a C grade, the application of the kit adjustment may create an error in the grade.[3]

This, under the State Board's reading of the law, would not prohibit a taxpayer from using the Form 133 process to obtain a kit adjustment even though, at times, giving a kit adjustment to improvements with a C grade would create a subjective error in the assessment. This problem demonstrates the flaw in the State Board's C grade "threshold test" because, under that test, sometimes an application of a kit adjustment that creates an error in the grade forecloses a taxpayer's right to appeal and sometimes it does not.

In support of its position, the State Board further contends that the Court did not consider "the evolution of the kit adjustment as constrained by the procedural property tax statutes in effect in 1991 and 1992." (State Bd. Pet. for Reh'g at 1). In the State Board's view, this means that the Court did not review what the State Board believes is an essential issue, namely, how the property tax appeal procedures in effect during 1991 and 1992 interacted with the kit adjustment.

This argument is unpersuasive. How the kit adjustment and the property tax appeal procedures interacted has no bearing on the outcome of this case. As stated above, under section 6–1.1–15–12, Barth has a statutory right to have objective errors in an assessment corrected. In this case, Barth followed the statutory procedure for alleging an objective error in the assessment; if Barth is correct, Barth has the statutory right to have that error in the assessment corrected. To hold otherwise would substitute the will of the State Board for the will of the General Assembly.

The Court also notes that this argument rests on an erroneous assumption, namely, the notion that the State Board could only select the Form 133 process for the adjudication of kit adjustment appeals. In 1991 and 1992, there were three methods by which a taxpayer could allege an error in an assessment. *See Reams v. State Bd. of Tax Comm'rs,* 620 N.E.2d 758, 760 (Ind. Tax Ct.1993). The first method was the Form 130/131 process. *See* IND. CODE ANN. §§ 6–1.1–15–1 to –4 (West 1989) (codified in present form at *id.* §§ 6–1.1–15–1 to –4 (West Supp.1998)). The Form 130/131 process in effect at that time allowed a taxpayer to allege any error (subjective or objective) in an assessment. The only catch was that the Form 130/131 process could only be used in a tax year where the property was actually assessed. *See Kent Co. v. State Bd. of Tax Comm'rs,* 685 N.E.2d 1156, 1158 (Ind. Tax Ct.1997), *review denied.* Therefore, as the

---

rection of the entire assessment. *See Barth,* 699 N.E.2d at 806–07 n. 19.

**3.** On a related point, the Court notes that throughout the State Board's petition, the State Board posits that the lower grade *may* account for the lower construction cost of a kit building. Where an improvement qualifies for a kit adjustment and a lower grade has been given, the lower construction cost *may* have already been adequately accounted for in that lower grade. In cases where it has, the error is not prejudicial to the taxpayer. In cases where it has not, the error is prejudicial. However, there is no a priori way of knowing which errors are prejudicial and which errors are not.

The State Board expects the Court to discount this problem and allow the State Board to foreclose a taxpayer's right to appeal based on a lower assessing official's determination of grade. *See Barth,* 699 N.E.2d at 805–06. This would be problematic if the lower assessing official's determination of grade were guided by ascertainable standards. It is made even more so by the fact that the lower assessing official's determination of grade was based on regulations that "simply highlight the lack of ascertainable standards involved." *Town of St. John v. State Bd. of Tax Comm'rs,* 690 N.E.2d 370, 386 (Ind. Tax Ct.1997), *review granted,* 695 N.E.2d 123 (Ind. 1998).

State Board correctly observes, the Form 130/131 process was unavailable to a taxpayer alleging that the local assessing official did not grant a kit adjustment where one was warranted.

The second method was the Form 133 process, which allowed a taxpayer to allege an objective error in an assessment. The Form 133 process could be used in any tax year, whether there was an assessment during that year or not. This is the process that the State Board chose as the mechanism for kit adjustment appeals. Now the State Board argues that this choice was the best possible solution to deal with the situation.[4]

The State Board does not mention the other possibility. In 1991 and 1992, the Form 134 process was available to taxpayers.[5] The Form 134 process could be used to correct objective and subjective errors in an assessment and could be used in any tax year. *Kent Co.*, 685 N.E.2d at 1158. Therefore, the State Board could have chosen the Form 134 process as the mechanism to deal with kit adjustment appeals. Consequently, the argument that the State Board was constrained by the property tax appeal procedures is without merit.

The State Board could have chosen a process that would have obviated the problems faced in this case; it did not. Now, the State Board tries to deny a taxpayer the right to allege an error in an assessment because of the supposed limitations on the process the State Board chose for raising that error. The unfairness of this position was not lost on the Court in arriving at its decision. As the Court noted in the opinion, adherence to the State Board's position would "upset the

legitimate reliance interests of taxpayers." *Barth*, 699 N.E.2d at 807.

The State Board also contends that the Court rewrote section 6–1.1–15–12 and "undermin[ed] the principle that a Form 133 can only be used for objective errors." (State Bd. Pet. for Reh'g at 2). The Court did no such thing. When the State Board reviews a Form 133 petition, section 6–1.1–15–12 requires that the State Board correct any objective error *alleged by the taxpayer*. However, section 6–1.1–15–12 is silent about what kinds of errors *not alleged by taxpayer* the State Board *may* correct when reviewing an assessment.[6]

In this case, Barth used a Form 133 to allege an objective error in the assessments at issue. Under section 6–1.1–15–12, this was proper, and, under section 6–1.1–15–12, the State Board is required to correct this error in the assessment if it exists. Now the question becomes whether the State Board has the authority to correct the grade[7] of the subject property if it determines that a kit adjustment is warranted.

In *Hatcher v. State Board of Tax Commissioners*, 561 N.E.2d 852, 857 (Ind. Tax Ct.1990), this Court dealt with the extent of the State Board's authority to correct errors not alleged by the taxpayer when it reviews an assessment under section 6–1.1–15–12. In *Hatcher*, the Court concluded that it would be an impermissible expansion of section 6–1.1–15–12 to allow the State Board to reassess the entire property when a taxpayer alleges an objective error in an assessment. However, in *Hatcher*, this Court affirmed the State Board's authority to correct objective errors not raised by the taxpayer in its review of a Form 133 petition.

---

**4.** Implicit in this reasoning is the idea that because the State Board adopted an imperfect solution to a difficult problem, certain taxpayers should have to live with the inequities detailed in this Court's opinion.

**5.** The Form 134 process, codified at IND. CODE ANN. §§ 6–1.1–4–7, –8 (West 1989), was repealed effective January 1, 1994. The Form 134 process has been incorporated into the Form 130/131 process. *See Kent Co.*, 685 N.E.2d at 1158 n. 5.

**6.** This Court has previously noted the difference "between having the authority to do a thing

[and] ... being required to do it." *Dalton Foundries, Inc. v. State Bd. of Tax Comm'rs*, 653 N.E.2d 548, 554 (Ind. Tax Ct.1995).

**7.** As the Court noted in the opinion, the State Board cannot escape the fact that Barth has not raised the grade issue. It is the State Board that has done so. *See Barth*, 699 N.E.2d at 806 n. 17. The fact that the grade and the kit adjustment are inextricably linked does not change the fact that they are discrete issues. *See id.* at 807. The qualification of a given improvement for the kit adjustment does not depend on how a lower assessing official graded the improvement.

As the Court noted in the opinion, *Hatcher* did not address whether the State Board's authority under section 6–1.1–15–12 to correct errors not raised by the taxpayer includes the ability to correct subjective errors arising out of the correction of an objective error. In the opinion, the Court concluded that it "would be nonsensical to refuse to allow the State Board to adjust the grade . . . if the kit adjustment is determined to be warranted." *Barth,* 699 N.E.2d at 807. The Court's view has not changed.

The flaw in the State Board's argument stems from its failure to understand that there is a difference between what errors the taxpayer may allege on a Form 133 petition and what errors the State Board may correct when reviewing a Form 133. Accordingly, the State Board's contention that the Court "undermin[ed] the principle that a Form 133 can only be used for objective errors" is overly simplistic. A Form 133 petition can only be used *by the taxpayer* to allege objective errors in an assessment. However, although the State Board generally may not correct subjective errors not raised by the taxpayer when it reviews a Form 133 petition, *see Hatcher,* 561 N.E.2d at 857, this case is an exception due to the unique circumstances this case presents.

In its petition, the State Board makes a number of assertions that deserve comment by the Court, the first of which is its mischaracterization of the Court's reasoning in the opinion. According to the State Board, the Court held that "the State Board created the problems by creating the kit adjustment, and therefore, the Board must live with the results." (State Bd. Pet. for Reh'g at 2 n. 1). The Court did not take the State Board to task for creating the kit adjustment; instead, the Court took the State Board to task for choosing the Form 133 process as the means for adjudicating kit adjustment appeals and then seeking to close that avenue of relief in certain cases.

The State Board also attacks the Court's criticism of some of the guidance provided in Instructional Bulletin 92–1. In Instructional Bulletin 92–1, the State Board gave a list of some examples involving kit adjustment appeals. One of the examples reads:

Taxpayer files Form 133 on a structure that qualifies for the [kit] adjustment. The assessment is correct because the assessor applied a low Grade and Design Factor to account for the lower cost of construction. The assessing officials should deny the Form 133 Petition for Correction of [an] Error based on the rationale that there is no error to correct.

The Court described this example as the "apotheosis of ipsedixitism [because t]he State Board has no way of knowing whether the grades given by local assessors adequately accounted for the lowered reproduction cost associated with buildings qualifying for the kit adjustment in each case." *Barth,* 699 N.E.2d at 804 n. 11. The State Board believes that the Court did not read Instructional Bulletin as a whole and argues that the fact that the assessment being correct was an assumed fact of the example. This, in the view of the State Board, invalidates the Court's criticism.

The State Board's own interpretation of this example belies the State Board's argument. In this case, the State Board relied on this example to reject Barth's Form 133 petition. There was no analysis of whether the assessment was correct, just the reflexive finding that because the grades were lower than C, the subject improvements did not qualify for the kit adjustment. One can hardly find a better example of ipsedixitism. The Court's criticism stands.

In its petition, the State Board contends that the Court "erred when it found that the State Board ordered the county assessors to reassess all [kit] buildings." (State Bd. Pet. for Reh'g at 3–4 n. 2). The State Board argues that it did not have the authority to order local assessors to do this because neither the memorandum nor the amendment to the regulations complied with the requirements of IND. CODE ANN. § 6–1.1–4–9 (West 1989); § 6–1.1–4–10 (West 1989) (amended 1995). The fact that the State Board may not have had the authority to order a reassessment of kit buildings does not mean that it did not do so. *See, e.g., Wetzel Enters. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1259 (Ind. Tax Ct.1998). In addition, as the State Board acknowledges, Instructional Bulletin

92–1 states: "In 1991, the State Board of Tax Commissioners ordered local township assessors to reassess [kit buildings]...." Given the lofty position Instructional Bulletins hold in property tax law, *see State Bd. of Tax Comm'rs v. Two Market Square*, 679 N.E.2d 882 (Ind.1997), the State Board cannot complain when the Court takes factual representations made in those Instructional Bulletins at face value. *See* IND.R.EVID. 801(d)(2)(A).

The State Board's quarrel about whether it had the authority to order the reassessment of kit buildings misses the point as well. In the opinion, the Court was concerned with the possible inequities of the State Board's position. When the State Board amended the regulations to include the kit adjustments it (at the very least) requested local assessing officials to reassess kit buildings. As a result, some kit buildings that already had a lower grade were reassessed and given the kit adjustment. As pointed out in the opinion, this means that "Barth has a right to have the State Board determine whether its buildings qualified for the kit adjustment despite the fact that they had already received a lower grade *because other buildings were given a kit adjustment despite the fact that they had already received a lower grade.*" *Barth*, 699 N.E.2d at 806 n. 15 (emphasis added).

Finally, the State Board contends that the February 22, 1991 memorandum referenced in the opinion "explained that the [kit adjustment] did not apply to those improvements [that already had] lower grades by stating that 'most qualifying structures should be graded at "C" grade.'" (State Bd. Pet. for Reh'g at 6 (quoting Memorandum from State Board of Tax Commissioners to All Assessing Officials (Feb. 22, 1991), at 1)). The State Board is incorrect. In no way did the memorandum predicate the qualification of an improvement for the kit adjustment on how it was graded *before* the kit adjustment amendment.[8] Rather, the language quoted by the State Board merely indicates that most qualifying improvements, *after* they are

given the kit adjustment, should be given a C grade. In addition, as noted in the opinion, this interpretation would be contrary to the regulation itself because the regulation requires that a kit adjustment be given where the improvement is a kit building. *See Barth*, 699 N.E.2d at 805. Consequently, this interpretation would not control the outcome.

### CONCLUSION

For the above stated reasons the State Board's petition for rehearing is DENIED.

---

8. In fact, assuming arguendo that the quoted language was concerned with predicating the qualification of a given improvement for the kit adjustment on how the improvement was previously graded, the quoted language actually supports the Court's position. The use of the word, most, means that there would be qualifying improvements that had been previously been given a grade other than C.