ABOITE CORPORATION, Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

No. 49T10–9701–TA–102.

Tax Court of Indiana.

Dec. 7, 2001.

Publication Ordered Jan. 28, 2002.

David L. Pippen, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Aboite Corporation (Aboite) appeals the final determination of the State Board of Tax Commissioners (State Board) valuing its property for the March 1, 1992 assessment date.

### ISSUES

I. Whether the State Board exceeded its statutory authority in reassessing Aboite's land from agricultural to commercial?

II. Whether the State Board erroneously calculated the amount of obsolescence depreciation to which Aboite's shopping center is entitled?

III. Whether the State Board's assessment of the shopping center's atrium is arbitrary and capricious? [1]

---

**1.** Aboite raises one additional issue not considered by the Court: whether the State Board's assessment regulations violate both the Indiana Constitution and the United States Constitution.

In 1998, Indiana's Supreme Court declared the State Board's regulations governing the 1995 state-wide general reassessment unconstitutional. *See State Bd. of Tax Comm'rs v.* *Town of St. John,* 702 N.E.2d 1034, 1043 (Ind.1998) (stating that "the existing cost schedules ... violate the Property Taxation Clause of the Indiana Constitution"). Those regulations were almost identical to the regulations at issue in this case, which govern the 1989 state-wide general reassessment. *Phelps Dodge v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1099, 1104 & fn. 6 (Ind. Tax Ct.1999)

## FACTS AND PROCEDURAL HISTORY

■ Aboite owns land and a shopping center in Allen County, Indiana. For the March 1, 1992 assessment date, Aboite's property was assigned an assessed value of $2,317,300. Believing the assessment to be incorrect, Aboite filed an appeal with the Allen County Board of Review (BOR). On November 4, 1992, the BOR issued a final determination in which it found Aboite's assessment "to be without error." (Joint Ex. 1, p. 6.)

Consequently, Aboite appealed the BOR's final determination by filing a Form 131 Petition for Review of Assessment with the State Board. After a hearing, the State Board issued a final determination on January 7, 1997, in which it reduced Aboite's overall assessment to $1,895,440 (by adjusting the improvement's wall heights, grade factors, and allowing a twenty percent obsolescence depreciation adjustment). The State Board denied Aboite relief, however, on the issues of land reclassification, additional obsolescence depreciation, and atrium pricing.

Aboite filed an original tax appeal with this Court on January 6, 1997. Trial was held on July 2, 1998. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court gives great deference to final determinations of the State Board. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court will re-verse a State Board final determination only if it is unsupported by substantial evidence, is arbitrary or capricious, constitutes and abuse of discretion, or exceeds statutory authority. *Id.*

■ The taxpayer bears the burden of showing the invalidity of the State Board's final determination. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998). To meet this burden, the taxpayer must present a prima facie case (a case supported by probative evidence, i.e., evidence that is sufficient to establish a given fact and which if not contradicted will remain sufficient). *Damon Corp. v. State Bd. of Tax Comm'rs*, 738 N.E.2d 1102, 1106 (Ind. Tax Ct.2000). Once the taxpayer presents a prima facie case, the burden shifts to the State Board to rebut the taxpayer's evidence and support its final determination with substantial evidence. *Clark*, 694 N.E.2d at 1233.

## DISCUSSION

### I. Land Reassessment

In the 1980's, Aboite purchased approximately 1,500 acres of farmland in Allen County, Indiana. At the time of purchase, the land was classified as "agricultural" and was valued on an acreage basis. Aboite subsequently developed the land, subdivided it into residential lots, and sold them.

Aboite retained ownership to one of the lots, however, which is at issue in this case.

(citation omitted), *review denied.* Nevertheless, the fact that the subject property was assessed under unconstitutional regulations does not mean the assessment will be invalidated. *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998) (citations omitted), *review denied.* "Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Id.* *See also Town of St. John v. State Bd. of Tax Comm'rs*, 729 N.E.2d 242, 246 & 251 (Ind. Tax Ct.2000) (ordering that all real property in Indiana shall be reassessed under new, constitutional regulations as of March 1, 2002 and providing that until then, real property tax assessments shall be made in accordance with the current system).

In 1988, Aboite built a shopping center on that lot. In 1992, the State Board reassessed the lot to reflect the land's change in use. Specifically, the State Board changed the lot's classification from "agricultural" to "commercial." [2]

■ The parties disagree as to whether or not the State Board had the authority to reassess the lot. They do agree, however, that Indiana Code § 6–1.1–4–12 is controlling. That statute provides:

> If land assessed on an acreage basis is subdivided into lots, the land shall be reassessed on the basis of lots. If land is rezoned for, or put to, a different use, the land shall be reassessed on the basis of its new classification. If improvements are added to real property, the improvements shall be assessed. An assessment or reassessment made under this section is effective on the next assessment date. However, if land assessed on an acreage basis is subdivided into lots, the lots may not be reassessed until the next assessment date following a transaction which results in a change in legal or equitable title to that lot.

IND.CODE § 6–1.1–4–12. Aboite argues that, pursuant to the statute, "Indiana law does not allow for the re-classification of the [lot] until title changes." (Pet'r Post Hrg. Br. at 6.) Thus, Aboite argues, the State Board is precluded from reassessing the lot until its title is transferred to a third party. The State Board, on the other hand, argues that regardless of the fact that the lot had been subdivided, because it has changed from an "agricultural" to a "commercial" use, the statute requires that "it shall be reassessed on the basis of its

new classification." *See* IND.CODE § 6–1.1–4–12.

■ Generally, courts are not at liberty to construe a statute that is unambiguous. *City of Evansville v. Zirkelbach*, 662 N.E.2d 651, 653 (Ind.Ct.App.1996), *trans. denied.* "However, where a statute is susceptible to more than one interpretation, it is ambiguous and the reviewing court must ascertain the intent of the legislature and interpret the statute to effectuate that intent." *Id.* Thus, in construing Indiana Code § 6–1.1–4–12, this Court will interpret the statute as a whole, and not overemphasize a strict literal or selective reading of its individual words. *See Gen. Motors Corp. v. Indiana Dep't of Workforce Dev.*, 671 N.E.2d 493, 497 (Ind.Ct. App.1996).

■ Indiana Code § 6–1.1–4–12 requires that land be reassessed upon the occurrence of two events: when acreage is subdivided into lots, and when land is put to a different use. IND.CODE § 6–1.1–4–12. Aboite relies on the "exception" stated in Indiana Code § 6–1.1–4–12: *"if land assessed on an acreage basis is subdivided into lots, the lots may not be reassessed until the next assessment date following a transaction which results in a change in legal or equitable title to that lot."* IND. CODE § 6–1.1–4–12. The plain, ordinary meaning of this exception, however, presumes that acreage is subdivided into lots so that they may be sold, and until the lots are sold, its owner "reaps the benefit" of a lower assessment *(footnote 2, supra).* In other words, the exception is designed to encourage developers to buy farmland, subdivide it into lots, and resell the lots.

---

2. In Indiana, agricultural land is assigned a "true tax value" of $495 per acre. Adjustments are then made, either upward or downward, to account for the soil's capacity to produce crops. *See* 50 IAC 2.1–2–2. With a

"commercial" classification, however, Aboite's lot appears to average a "true tax value" of $38,000 per acre. (*See* Joint Ex. 1 at 16.)

■ In this case, not only did Aboite *not* sell its vacant lot, but it built a shopping center on it instead. Assuming arguendo that Aboite merely decided to "hold off" in selling its vacant lot until a later date, the intent of the exception would prevail, and the land would continue to be assessed on its original agricultural acreage basis. Because Aboite converted the vacant lot into an income-producing property, however, the intent of the exception is frustrated. Indeed, the exception applies when land is subdivided into lots only, not when a change of use occurs. As a result, the State Board properly reassessed the lot from agricultural to commercial.

■ "Another fundamental rule of statutory construction is that if a statute is susceptible to more than one interpretation, then the court may consider the consequences of a particular construction." *Herff Jones v. State Bd. of Tax Comm'rs*, 512 N.E.2d 485, 490–91 (Ind. Tax Ct.1987) (citation omitted). In Indiana, land is assessed as either "agricultural" or "nonagricultural." *See* 50 IAC 2.1–2–1 (nonagricultural land valuation); 50 IAC 2.1–2–2 (agricultural land valuation). If Aboite's position were advanced, however, commercial developers could always escape a "nonagricultural" assessment by merely purchasing farmland, subdividing the acreage into lots, keeping some of the lots, changing the use, and not reselling the retained lots (which is what occurred here). It is difficult to believe that the legislature intended such an absurd result. Accordingly, the State Board's final determination on the issue of land reassessment is AFFIRMED.

---

3. 50 I.A.C. 2.1–4–5, Schedule E, provides that "atrium cost [is] computed grade 'A' quality, fireproof steel frame, steel and glass walls, glass and steel roof." 50 IAC 2.1–4–5.

## II. Obsolescence Depreciation

In its appeal to this Court, Aboite challenged the amount of obsolescence depreciation to which its shopping center is entitled. That issue, however, was remanded to the State Board prior to trial. Consequently, the Court need not address the issue in this opinion.

## III. Atrium Pricing

The entrance to Aboite's shopping center is marked by a large atrium. (Pet'r Exs. 1–3). Aboite claims that the State Board's assignment of value to the atrium "is [nothing] but arbitrary and capricious as a matter of law." (Pet'r Reply Br. at 4.) Specifically, Aboite argues that because the State Board's regulations fail to define "atrium," fail to provide instructions as to how an atrium's dimensions are measured, and fail to sufficiently explain what constitutes an "A quality"[3] atrium, the State Board has not shown "it has any basis for assessing an 'atrium,' let alone a basis on which reasonable and honest people could be led to uniform or even similar conclusions." *Id.* In other words, Aboite argues that because the regulations providing for the assessment of atriums lack ascertainable standards, they are unconstitutional.[4]

As this Court has already explained, "until the new [constitutional] regulations are in place, [real property] must be assessed under the present system." *See Whitley Prods.*, 704 N.E.2d at 1121. Accordingly, Aboite cannot come into court, merely point out the inadequacies of the present system and obtain a reversal of its assessment. *See id.* Instead, Aboite

---

4. At oral argument, counsel for Aboite admits that the atrium pricing issue and the constitutional issue it raises (see footnote 1, *supra*) "dovetail." (Oral Argument Tr. at 19.) This Court construes the two issues as one in the same.

bears the burden of establishing, by a prima facie case, that its atrium was erroneously assessed. *See Damon Corp.*, 738 N.E.2d at 1106.

 Aboite submitted little evidence as to the atrium's pricing. In fact, in the "Assessment Review and Analysis"[5] that was presented at the State Board hearing, Aboite merely presented an alternate calculation for the atrium's pricing, based on a "C" grade, rather than the "A" grade as used by the State Board. (*See* Joint Ex. 3 at 2.) This alternate calculation, however, is nothing more than a conclusory statement. *See Whitley Prods.*, 704 N.E.2d at 1119. Conclusory statements do not constitute probative evidence. *Id.* Thus, without any further explanation or evidence that would indicate other similar atriums are assessed at a "C" grade, Aboite's "Analysis" does not show what the atrium's grade should be and therefore does not constitute probative evidence that the State Board's pricing of the atrium is improper. *See id.*

Aboite has failed to meet its burden of proof on this issue, and therefore the State Board's duty to support its final determination with substantial evidence is not triggered. *See id.* at 1119–20. Thus, the State Board's final determination on the issue of atrium pricing is AFFIRMED.

## CONCLUSION

For all the foregoing reasons, this Court AFFIRMS the State Board's final determination with respect to Issues I and III. As stated earlier, Issue II was remanded, prior to trial, to the State Board for further consideration.

## *ORDER*

Petitioner, State Board of Tax Commissioners, has filed its motion to publish. The Court, having considered said motion and being duly advised, now GRANTS Petitioner's motion to publish.

THEREFORE, the Clerk of the Court is Ordered to cause to be published the opinion in this case, handed down on December 7, 2001, and to forward a copy of the opinion to all organizations to which published opinions are ordinarily sent.

---

5. Aboite was represented at the State Board hearing by its consultant, M. Drew Miller, of Landmark Appraisals. Mr. Miller prepared the "Assessment Review and Analysis."