**HAMILTON COUNTY ASSESSOR,**
Petitioner,

v.

**ALLISONVILLE ROAD DEVELOPMENT, LLC,**
Respondent.

No. 49T10–1204–TA–30.

Tax Court of Indiana.

April 12, 2013.

Marilyn S. Meighen, Attorney at Law, Carmel, IN, Attorney for Petitioner.

Andrew S. Berger, Association of Indiana Counties, Indianapolis, IN, Attorney for Amicus Curiae.

James W. Beatty, James F. Beatty, Jessica L. Findley, Donald D. Levenhagen, Landman & Beatty, Indianapolis, IN, Attorneys for Respondent.

FISHER, Senior Judge.

This case concerns whether the Indiana Board of Tax Review erred in determining that Indiana Code § 6–1.1–4–12 required a land developer's property be assessed as agricultural land for the 2008 tax year despite the fact that it was not used for agricultural purposes. Finding the Indiana Board's determination proper, the Court affirms.

**FACTS AND PROCEDURAL HISTORY**

The subject property, consisting of two vacant land parcels, is located in Fishers, Indiana. Beginning in the 1990s, several land developers [1] purchased and owned the property. Prior to that time, the property was actively farmed. Effective with the 2002 general reassessment, the Assessor changed the property's classification from agricultural land to undeveloped, useable commercial land.

On July 31, 2009, Allisonville Road Development, LLC (Allisonville Development), a land developer that purchased the parcels in April 2006, appealed the property's 2008 assessment to the Hamilton County Property Tax Assessment Board of Appeals ("PTABOA"). On January 11, 2010, the PTABOA reduced the assessment from $2,237,300 to $1,427,400. Unsatisfied with the reduction, Allisonville Development filed a petition for review with the Indiana Board on January 27, 2010. Allisonville Development asserted that the 2008 assessment was incorrect because the Assessor's 2002 reclassification of the property from agricultural to commercial contravened Indiana Code § 6–1.1–4–12. More specifically, Allisonville Development claimed that this statute precluded reassessments based on new classifications until land was subdivided, rezoned, purchased by a non-developer, construction of a building commenced, or a building permit was issued. Allisonville Development explained that because none of those events had occurred as of either the 2002 or the 2008 assessment dates, the property should still have been assessed as agricultural land.[2]

---

1. Indiana Code § 6–1.1–4–12(a) defines a "land developer" as "a person that holds land for sale in the ordinary course of the person's trade or business." IND.CODE § 6–1.1–4–12 (2013).

2. In 2010, however, Allisonville Development subdivided and sold a portion of its land to an entity that began to construct a building on the land.

On March 15, 2012, the Indiana Board issued a final determination explaining that under Indiana Code § 6–1.1–4–12, land could be reassessed based on new classifications if certain events occurred, particularly a change in the land's use.[3] Given its reading of *Aboite Corporation v. State Board of Tax Commissioners*, 762 N.E.2d 254 (Ind. Tax Ct.2001), *review denied*, the Indiana Board determined that a cessation of farming activities did not constitute a change in use sufficient to warrant reassessment under Indiana Code § 6–1.1–4–12.[4] (*See* Cert. Admin. R. at 60 ¶ 32 (footnote added).) As a result, the Indiana Board found that the property's assessment as commercial land was in error, and it reduced Allisonville Development's 2008 assessment to $15,684.

On April 27, 2012, the Assessor filed this original tax appeal. The Court heard oral argument on January 11, 2013. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ The party seeking to overturn a final determination of the Indiana Board bears the burden to prove that it is invalid. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). Consequently, the Assessor must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, unsupported by substantial or reliable evidence, or otherwise not in accordance with the law. *See* IND.CODE § 33–26–6–6(e)(1), (5) (2013).

3. The Indiana Board did not conduct a hearing.

4. The parties also disputed whether the 2005 or 2006 version of Indiana Code § 6–1.1–4–12 applied, but the Indiana Board did not resolve that issue.

## DISCUSSION

On appeal, the Assessor claims that the Indiana Board's final determination is erroneous for two main reasons. First, the Assessor states that the Indiana Board used the wrong version of Indiana Code § 6–1.1–4–12 when it awarded the subject property the "developer's discount" for 2002. (*See* Pet'r Br. at 7–12, 14–16.) Second, the Assessor contends that the Indiana Board erred in determining that the cessation of farming activities was not a "change in use" under Indiana Code § 6–1.1–4–12. (*See* Pet'r Br. at 12–14.)

-1-

The 2002 version of Indiana Code § 6–1.1–4–12 required that land be reassessed when it was subdivided into lots, rezoned, or put to a different use. *See Howser Dev. LLC v. Vienna Twp. Assessor*, 833 N.E.2d 1108, 1110 (Ind. Tax Ct.2005). The statute, however, contained an exception to this rule, known as the "developer's discount:" if land was subdivided into lots *only*, the reassessment was delayed until the next assessment date following a change in title to the land. *Id.* at 1110. The General Assembly amended this statute in 2006, which, among other things, expanded the scope of the developer's discount. *See* IND.CODE § 6–1.1–4–12 (2006).

The Assessor has spent a great deal of time arguing that the Indiana Board awarded the developer's discount under the 2006 version of the statute when it should have used the 2002 version of the statute.[5] (*See* Oral Argument Tr. at 10–11; Pet'r Reply Br. at 4–6; Pet'r Br. at 9–11 (footnote added).) Nonetheless, this is a non-issue.

5. The Assessor claims that the Indiana Board erred in determining that Allisonville Development's property qualified for the developer's discount in 2002 because Allisonville Development did not subdivide its land until 2010. (*See* Pet'r Br. at 9.)

In its final determination, the Indiana Board found that it need not determine which version of the statute applied because "none of the events that would trigger a reassessment under either version of the statute [had] occurred[.]"[6] (Cert. Admin. R. at 58 ¶27 (footnote added).) Moreover, the Indiana Board's final determination expressly indicates that it did not reach the issue of whether the subject property qualified for the developer's discount in 2002. (See Cert. Admin. R. at 61 n.1 (explaining that because it found that none of the events triggering reassessment had occurred in this case, it need not reach the issue of when the developer's discount would prevent an otherwise proper reassessment).) Consequently, the Assessor has not demonstrated that the Indiana Board's final determination is erroneous on this basis.[7]

-2-

■ Next, the Assessor claims that the *Aboite* case does not support the Indiana Board's determination that a cessation of farming activities is not a "change in use." (See Pet'r Br. at 12–14.) According to the Assessor, *Aboite* simply held that a "change in use" occurred when the developer built a shopping center on its land. (See Pet'r Br. at 13–14.) The Assessor also claims that because the Indiana Board found that the subject property had not been used for agricultural purposes since before the 1990s, assessing it as agricultural land violates Indiana Code § 6–1.1–4–13,

which requires that land "be assessed as agricultural land only when it is devoted to agricultural use." (See Oral Argument Tr. at 23–26). See also IND.CODE § 6–1.1–4–13(a) (2002).

Although the Assessor is correct that the facts giving rise to the "change in use" issue in *Aboite* and this case differ, the Assessor has missed the bigger picture. In *Aboite*, this Court explained that the developer's discount was "designed to encourage developers to buy farmland, subdivide it into lots, and resell the lots." See *Aboite Corp. v. State Bd. of Tax Comm'rs*, 762 N.E.2d 254, 257 (Ind. Tax Ct.2001), *review denied*. That purpose, however, is not only confined to the developer's discount, but also is the bedrock of the entire statute. Indeed, Indiana Code § 6–1.1–4–12, as a whole, promotes commercial development by allowing a developer's land to be assessed on the basis of its original (*i.e.*, its pre-purchase) classification until an objective event signaling the commencement of development occurs. See I.C. § 6–1.1–4–12 (2002); I.C. § 6–1.1–4–12 (2006). See also *State v. Adams*, 583 N.E.2d 799, 800 (Ind.Ct.App.1992) (stating that "the intent of the legislature is to be gleaned from the statute as a whole and not from any section or portion thereof taken piecemeal"), *trans. denied*.

■ Here, the Assessor claims that the subject property has been used for commercial purposes since the 1990s because that is when it was sold to commercial

---

**6.** In other words, the Indiana Board analyzed both the 2002 and the 2008 assessments based on the version of the statute in effect on the assessment date.

**7.** As an aside, the *amicus curiae* warn that upholding the Indiana Board's invalidation of the 2002 assessment overly complicates the budget planning process for local government officials by creating substantial ambiguity in the calculation of tax rates and the determination of the assessed value of property within a

county. (See *Amicus Curiae* Br. at 5–8.) The "invalidation" of the property's 2002 assessment, however, does not provide Allisonville Development or any other taxpayer with retroactive relief; rather, it affects only the value of Allisonville Development's property for the 2008 tax year. Consequently, no more ambiguity in the budget planning process exists than would exist during any other timely filed property tax appeal.

developers and all active farming operations ceased. (*See* Pet'r Br. at 4.) Thus, the Assessor equates a "change in use" to nothing more than a change in ownership and *potential* use. (*See* Pet'r Br. at 4–5.) A "change in use" under Indiana Code § 6–1.1–4–12, however, requires something more.

■ Under the 2002 version of Indiana Code § 6–1.1–4–12, reassessments based on new classifications are permissible when land is subdivided into lots, rezoned, or put to a different use: *i.e.,* when events that indicate that commercial development is imminent occur. *See* I.C. § 6–1.1–4–12 (2002); *see also Johnson Cnty. Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue,* 568 N.E.2d 578, 581 (Ind. Tax Ct.1991) (providing that statutory language will be accepted in its ordinary and popular meaning unless doing so defeats legislative intent) *aff'd by* 585 N.E.2d 1336 (Ind.1992). Here, the cessation of farming activities and the subsequent non-use of land does not necessarily evidence the imminence of commercial development. For example, while certain agricultural land may lie fallow from time-to-time, the use of the land remains agricultural. Likewise, and as evidenced here, a developer's non-use of land does not necessarily signal the imminence of commercial development. Indeed, while different land developers have owned the subject property since the 1990s and have not actively farmed it, an event signaling the commencement of commercial development (*i.e.,* the property's subdivision) did not occur until 2010. Accordingly, the Assessor has not demonstrated that the Indiana Board's final determination is erroneous on this basis.[8]

## CONCLUSION

For the foregoing reasons, the final determination of the Indiana Board, which required Allisonville Development's parcels to be assessed as agricultural land for the 2008 tax year despite the fact that neither parcel was actively farmed, is AFFIRMED.

---

**8.** Absent a clear expressed legislative intention to the contrary, this Court will regard statutes as effective, harmonize them, and accord full application to each unless they are irreconcilable and in hopeless conflict. *Weiss v. Indiana Parole Bd.,* 838 N.E.2d 1048, 1051 n. 1 (Ind.Ct.App.2005) (citation omitted), *trans. denied.* To the extent the Assessor alleges that Indiana Code § 6–1.1–4–12 and Indiana Code § 6–1.1–4–13 conflict, the Court finds that in limited instances, like here, Indiana Code § 6–1.1–4–12 essentially functions as an exception to Indiana Code § 6–1.1–4–13.