In the Matter of SENPIKE MALL COMPANY et al., Respondents, v ASSESSOR OF THE TOWN OF NEW HARTFORD et al., Appellants, and NEW HARTFORD CENTRAL SCHOOL DISTRICT, Appellant-Intervenor.

Fourth Department, March 4, 1988

## APPEARANCES OF COUNSEL

*Longeretta, Giruzzi & Zamorski* for appellants.

*Tabner & Laudato (John Tabner* of counsel), for appellant-intervenor.

*Siegel, Genchel & Peddy, P. C.,* and *Lombardi, Devorsetz, Stinziano & Smith (Sidney Devorsetz* of counsel), for respondents.

## OPINION OF THE COURT

BOOMER, J.

Petitioners, the owners of a regional shopping mall in the Town of New Hartford, brought this proceeding pursuant to Real Property Tax Law article 7, to reduce the assessments upon their property. After a trial, the Judicial Hearing Officer reduced the assessments from $4,566,400 for the tax years 1982 through 1984 to $3,179,750 for 1982, $3,284,250 for 1983, and $3,372,500 for 1984. On appeal the assessors of the town and the school district raise several issues, all but one of which may be briefly addressed.

■ The decision of the Federal court involving the value of the property in 1982 does not collaterally estop the owners from establishing a different value in this proceeding. In that action *(Interstate Props. v Pyramid Co.,* 581 F Supp 982), the District Court, based upon the testimony of a real estate appraiser, determined that the value of the mall in 1982 for mortgage purposes was $55,000,000 and, accordingly, it determined that the mortgage loan made by the Teachers Insurance and Annuity Fund was excessive and ordered the owners to return a portion of the loan. The appraiser in that case had testified that, in valuing the mall for mortgage purposes, he considered its value subject to the existing financing. With the existing financing, he concluded, the property was worth $55,000,000, but without that favorable financing, it would be worth only $43,000,000.

Although the Federal court, in determining the value of the property for mortgage loan purposes, valued the property subject to existing financing, the rule is otherwise in determin-

ing value for assessment purposes. In tax certiorari proceedings, the property must be valued without regard to its existing mortgage financing *(Matter of Mid-Island Shopping Plaza v Podeyn,* 25 Misc 2d 972, 989, *affd* 14 AD2d 571, *affd* 10 NY2d 966). Since the issue in the Federal action was not the same as the issue presented here, the principle of collateral estoppel does not apply.

■ The Judicial Hearing Officer properly declined to give great weight to the principal amounts of the mortgage loans and to the fire insurance coverage on the property *(see, Farash v Smith,* 59 NY2d 952, 955; *People ex rel. Parklin Operating Corp. v Miller,* 287 NY 126; *Matter of River House Co. v Assessor of City of Binghamton,* 56 AD2d 980, *lv denied* 42 NY2d 811).

The assessors contend that, in using the income approach in valuating the property, the owners' appraiser improperly excluded from his estimate of gross income certain payments made by the tenants for the use of the fixtures and equipment paid for and installed by the owner. These payments were properly excluded in estimating the value for assessment purposes because the items installed were not taxable as part of the realty.

There is no merit to the assessors' contention that the Hearing Officer should have relied upon the market data approach submitted by the assessors' appraiser rather than upon the income approach. The Hearing Officer properly rejected the market data approach submitted on behalf of the assessors because he found that none of the sales relied upon by the appraiser were sufficiently comparable to the subject property to serve as a reliable guide to its value. In the case of income-producing properties, particularly shopping malls where investors are interested in net income, "the capitalization of income approach is usually a sure guide to value" *(Roosevelt Nassau Operating Corp. v Board of Assessors,* 68 Misc 2d 183, 188, *affd* 41 AD2d 647, *mot to dismiss appeal granted* 33 NY2d 825, *lv denied* 34 NY2d 514, and cases cited therein).

The issue requiring more extended analysis concerns the proper treatment of the real estate taxes. The assessors contend that the owners' appraiser and the Hearing Officer, in their income approach, improperly used the "assessor's formula" and thus erroneously took credit for taxes paid by the tenants.

The income approach to valuation is based on the premise that income-producing property derives its value from the net income it is able to produce. In estimating the value by this method, the appraiser estimates the fair market rental of the property, deducts a percentage for vacancy and loss of rentals, and arrives at the effective gross income. From this he deducts the reasonable expenses of the property to arrive at the net income, which he capitalizes at a rate representing the rate of return a knowledgeable investor would expect from the property. Ordinarily, in the case of rental property, real estate taxes are the responsibility of the owner and in using the income method of valuation, real estate taxes are deducted as an expense in arriving at net income.

In the case of valuation for tax certiorari purposes, however, deduction of the actual real estate taxes paid may result in a distortion of the value. This may be illustrated by the figures in the present case. The taxes for the initial year in question were $1,263,196. The owner, however, is seeking a reduction in his assessment, and if the assessment is reduced based on his estimate of value, the real estate taxes will be only $1,020,515, rather than the $1,263,196 actually paid, and the owner will get a refund of $242,681 in taxes. This will increase his net income by $242,681 which, when capitalized here at the rate of 12.5%, would result in a value of $1,941,448 more than if the taxes were not reduced and the tax expense remained at $1,263,196.

Thus, in using the income approach for tax certiorari purposes, the proper method is not to deduct the existing real estate taxes as an expense, but instead to use what is called the "assessor's formula" by adding to the capitalization rate a factor* which will mathematically account for the proper amount of taxes based on the income value as computed (see, *Matter of Commercial Structures v City of Syracuse*, 91 AD2d 1197, *lv denied* 59 NY2d 606). Thus, the distortion of value, which would occur if the taxes actually paid were deducted as an expense, is avoided.

The use of the "assessor's formula" to account for the tax

---

* This factor for accounting for the expense of real estate taxes is derived by multiplying the tax rate per thousand by the tax equalization rate (or, as here, by the stipulated percentage of assessments to full value) and dividing the result by 1,000. This tax factor is then added to the capitalization rate, and when divided into the net income, it accounts for the tax expense based on the value of the property as indicated by the income approach.

expense is understandable where the owner pays the taxes. Despite authority to the contrary *(see, Matter of Celwyn Co. v Board of Assessors,* 65 Misc 2d 495, 500), the use of the formula is also proper where, as here, the tenant and not the owner is responsible for the taxes. The value of real estate for assessment purposes is not affected by any agreement between the owner and the tenant. The income approach to valuation is based upon an estimate of the economic or market rent for the leased premises. The economic or market rent takes into account all of the fair and reasonable payments, judged by rents in the marketplace, that a tenant makes for the use of the premises. If the tenant pays all or a part of the taxes, that additional payment may be considered as part of the economic rent. For equivalent space, one tenant may pay the landlord $800 per month in rent and $200 for taxes, and another may pay $1,000 for rent with the landlord paying the taxes. In both cases, the leases indicate a market rent of $1,000 per month regardless of how portions of the total rent may be determined. Thus, in computing an economic or market rent, the appraiser may properly consider as rent, and include in the estimated gross income, not only those amounts denominated in the lease as rent but also any additional amounts paid by the tenant, such as those denominated as payments for taxes. And, if the appraiser does include in his estimate of gross income the amounts designated as payments for taxes, as he did here, he must then account for them as an expense to the owner. In order to avoid distortion, however, he should not deduct the taxes actually paid from the gross income but he should use the "assessor's formula".

Where the tenant is responsible for the taxes, the tenant, of course, and not the owner, will benefit from the reduction in the assessment and will receive the refund. This fact does not affect the income valuation of the property for real property tax purposes. For tax purposes, the property must be valued as though unencumbered by any lease. *(See, Matter of Merrick Holding Corp. v Board of Assessors,* 45 NY2d 538, 543-544.) It is the real estate that is to be valued and assessed and not the individual interest of the landlord or the tenant. If the landlord benefits by the tax reduction, his interest in the property becomes more valuable; if the tenant benefits, his interest becomes more valuable. In either case, however, the real estate has a higher income value than it would have if the taxes had remained at the higher level and the value for tax certiorari purposes is, accordingly, higher.

For these reasons, we find no fault with the method used by

the owners' appraiser and adopted by the Hearing Officer in accounting for the real property taxes on the property, even though under the leases the tenants and not the owner were responsible for payment of the taxes.

Accordingly, the judgment appealed from should be affirmed.

DOERR, J. P., GREEN and DAVIS, JJ., concur.

Judgment unanimously affirmed, with costs.