SOLLERS POINTE COMPANY,
Petitioner,

v.

DEPARTMENT OF LOCAL GOVERN-
MENT FINANCE,[1] Respondent.

No. 49T10–0101–TA–19.

Tax Court of Indiana.

Feb. 19, 2003.

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the Legislature abolished the State Board as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the Legislature created the Department of Local Government Finance (DLGF) and the Indiana Board of Tax Review (Indiana Board). Ind.Code §§ 6–1.1–30–1.1; 6–1.5–1–3 (West Supp.2001); 2001 Ind. Acts 198 §§ 66, 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. Ind.Code § 6–1.5–5–8 (West Supp.2001) (eff. 2002); 2001 Ind. Acts 198 § 95. Moreover, the law in effect prior to January 1, 2002 applies to these appeals. I.C. § 6–1.5–5–8. See also 2001 Ind. Acts 198 § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

Larry J. Stroble, Jennifer A. Dunfee, Barnes & Thornburg, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys For Respondent.

FISHER, J.

Sollers Pointe Company (Sollers Pointe) appeals the final determination of the State Board of Tax Commissioners (State Board) establishing the assessed value of its real property as of March 1, 1995. Sollers Pointe raises two issues, which the Court restates as:

I. Whether the State Board properly denied a reduction to the base rate of Sollers Pointe's improvement for its partitioning; and

II. Whether the State Board properly applied a B+2 grade to Sollers Pointe's improvement.

For the reasons stated below, the Court REVERSES the State Board's final determination on Issue I and REMANDS it to the Indiana Board of Tax Review (Indiana Board).[2] The Court AFFIRMS the State Board's final determination on Issue II.

2. All cases that would have previously been remanded to the State Board are now re-

## FACTS AND PROCEDURAL HISTORY

Sollers Pointe owns the eighteen-story Old National Bank Building in Vanderburgh County, Indiana. The building consists of office space in the basement, a bank on the first floor, a parking garage on floors one through five, office space on floors six through sixteen, and a private club on the seventeenth and eighteenth floors.

On January 2, 1996, Sollers Pointe appealed its 1995 assessment to the Vanderburgh County Board of Review (BOR). Sollers Pointe argued, among other things, that its building should receive a base rate reduction because each of the building's floors had fewer partitions than were assumed by the General Commercial Mercantile (GCM) models used to assess it.[3] Sollers Pointe also argued that the building's grade of B+2 was excessive. The BOR made an adjustment to the assessment of the building's first floor but denied all other relief.

Sollers Pointe then appealed the BOR's determination to the State Board via a Form 131 Petition for Review of Assessment. Sollers Pointe again argued that it should receive a base rate reduction because each floor of its building had fewer partitions than were assumed by the GCM models and that its grade of B+2 was excessive. The State Board held a hearing and issued its final determination on December 21, 2000, affirming the BOR.

On February 1, 2001, Sollers Pointe filed an original tax appeal. In lieu of a trial, the parties agreed to argue this case based on the administrative record compiled before the State Board. This Court heard oral arguments on July 11, 2002. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

 The Court gives great deference to the State Board's final determinations when it acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.*

 The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998). To do so, the taxpayer must present a prima facie case, i.e., a case in which the evidence is "sufficient to establish a given fact and which if not contradicted will remain sufficient." *GTE North Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 887 (Ind. Tax Ct.1994) (citations and internal quotation marks omitted). To establish a prima facie case, the taxpayer must offer probative evidence concerning the alleged assessment error. *Miller Structures, Inc. v. State Bd. of Tax Comm'rs,* 748 N.E.2d 943, 947 (Ind. Tax Ct.2001).

---

manded to the Indiana Board of Tax Review (Indiana Board). Ind.Code § 6-1.1-15-8. Final determinations made by the Indiana Board are subject to review by this Court pursuant to Indiana Code § 6-1.1-15. Ind. Code §§ 6-1.5-5-7; 33-3-5-2 (West Supp. 2002).

**3.** Sollers Pointe building was assessed using the General Commercial Mercantile office, bank, and parking models. See Ind. Admin. Code tit. 50, r. 2.2-11-1 (1996).

## Discussion

### I. Partitioning

Sollers Pointe argues that its building should receive a reduction to its base rate because it contains less partitioning than was assumed in the GCM models used to assess it. The State Board, however, argues that Sollers Pointe did not meet its burden of proof because the regulations do not specify the exact quantity of partitioning assumed in the models.[4] Instead, the State Board contends that the GCM models presume "typical" partitioning and that Sollers Pointe failed to show that its partitioning was not "typical."[5]

Under Indiana's property tax assessment system, assessors use cost schedules to determine the base reproduction cost of a particular improvement. *Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 223 (Ind. Tax Ct.2000), *review denied. See also* Ind. Admin. Code tit. 50, r. 2.2–11–6 (1996). To help identify and define various classes of buildings, the State Board has categorized improvements into several models. Ind. Admin. Code tit. 50, r. 2.2–11–1 to 3 (1996). A model is a "conceptual tool used to replicate reproduction cost of a given structure using typical construction materials. The model assumes that there are certain elements of construction for a given use type." Ind. Admin. Code tit. 50, r. 2.2–10–6.1(a)(1) (1996). The State Board's regulations also provide for adjustments to be made to the base price when the improvement varies from the model. 50 IAC 2.2–10–6.1(c).

The offices in Sollers Pointe's building were assessed using the GCM office models.[6] These GCM models assume that offices have partitioning "typical" of finished divided office buildings. *See* 50 IAC 2.2–11–1(25) (providing that partitions in the GCM General Office model are "typical of finished divided office buildings"); 50 IAC 2.2–11–1(24) (providing that partitions in the GCM General Office–Basement model are "typical partitions found in office buildings"). Thus, one way Sollers Pointe could establish a prima facie case would be to present probative evidence showing that the partitioning in its building is not "typical" of finished divided areas in office buildings. *See Deer Creek Developers, Ltd. v. Dep't of Local Gov't Fin.*, 769 N.E.2d 259, 264 (Ind. Tax Ct.2002).

While Sollers Pointe maintains that the *quality* of its partitioning is typical of the GCM office use types, it argues that the *quantity* of its partitioning is not. Although the regulations do not state the typical quantity of partitioning in linear feet, they do speak in terms of typical cost

---

4. The State Board also argued that Sollers Pointe was not entitled to a base rate adjustment for partitioning because such a determination would require subjective judgment. However, a determination of whether components, such as partitioning, are present in the taxpayer's building is an objective determination. *See Wareco Enters., Inc. v. State Bd. of Tax Comm'rs*, 689 N.E.2d 1299, 1302 (Ind. Tax Ct.1997). Moreover, Sollers Pointe filed a Form 131 Petition, which is not limited to objective errors only. *See Barth, Inc. v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1084, 1086 (Ind. Tax Ct.1998).

5. The State Board also argued that Sollers Pointe is not entitled to a reduction in its base

rate because a taxpayer cannot expect "absolute and precise exactitude" in its assessment. (Resp't Br. at 10–11 (citing *State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034 (Ind.1998)).) The Court, however, finds this argument unpersuasive and notes that "a taxpayer is entitled to a fair application of the regulations in assessing his or her property." *Barth, Inc. v. State Bd. of Tax Comm'rs*, 756 N.E.2d 1124, 1132 n. 12 (Ind. Tax Ct.2001).

6. The Court will not discuss the first floor bank area of the building because Sollers Pointe already received a partitioning adjustment for the bank area.

of partitioning. Indeed, the GCM model assumes that typical partitioning in an office has a cost $9.00 per square foot of *floor space* and the unit cost adjustment table shows that the cost per square foot of *partitioning space* (or wall space) is $3.30. *See* 50 IAC 2.2–11–6 (Sched.C). Thus, a taxpayer could meet its burden of showing that its partitioning is not typical by converting this information to the typical linear footage of partitioning assumed by the model and comparing that to its actual linear footage of partitioning present on the improvement. Likewise, the taxpayer could convert it to the cost of partitioning per square foot of floor space actually present on the improvement and comparing it to the typical cost of partitioning per square foot of floor space assumed by the model. Sollers Pointe did the latter.

Sollers Pointe submitted evidence that the floors in its building contained varying amounts of partitioning, ranging from 136 linear feet to 1,221 linear feet.[7] After converting its linear footage of partitioning contained on the office floors into the cost of partitioning per square foot of floor space, Sollers Pointe showed that it should receive a reduction to its base rate because its partitioning cost per square foot of floor space was less than the $9.00 per square foot of floor space presumed in the models.

For example, using the office on floor 7, Sollers Pointe showed there is 9,498 square feet of floor space on floor 7. The GCM model presumes that the typical partitioning for this floor would cost $85,482 ($9.00 × 9,498). *See* 50 IAC 2.2–11–6 (Sched.C). Floor 7 has 1,018 linear feet of partitioning with an effective height of 10 feet, resulting in 10,180 square feet of partitioning space (1,018 × 10). The unit cost adjustment table shows that the cost per square foot of partitioning space is $3.30. Therefore, the total cost of partitioning space on floor 7 would be $33,594 ($3.30 × 10,180). Sollers Pointe then converted this amount into the cost per square foot of floor space and showed that the cost of its partitioning actually cost $3.54 per square foot of floor space ($33,594 divided by 9,498). Thus, Sollers Pointe has shown that the cost of its partitioning per square foot of floor space is $5.46 less than the $9.00 per square foot of floor space of typical partitioning assumed in the regulations ($9.00 minus $3.54). Because Sollers Pointe has shown that the partitioning in its building is not "typical" of finished divided areas in office buildings pursuant to the regulation, it has met its burden of showing that it is entitled to a reduction to its base rate for its partitioning.[8] Accordingly, this Court REVERSES

---

7. Each floor of the building had the following linear footage of partitioning: basement—416; floor 1—440; floor 6—620; floor 7—1,018; floor 8—339; floor 9—1,085; floor 10—407; floor 11—814; floor 12—1,221; floor 13—136; floor 14—1,153; floor 15—1,085; and floor 16—678. (Pet'r Br. at 4.)

8. A taxpayer might also meet its burden by determining the typical linear footage of partitioning assumed in the model. Again, using the office on floor 7 as an example, the model presumes that the cost of typical partitioning would be $85,482 ($9.00 × 9,498). The unit cost adjustment table show the cost of partitioning per square foot of partition space is

$3.30 or $33.00 per linear foot of partitioning ($3.30 × 10 foot partitioning height). Dividing the total cost of assumed typical partitioning per square foot of floor space ($85,482) by the total cost of partitioning per linear foot ($33.00) results in the assumed quantity of typical linear feet of partitioning of 2,590 linear feet. The actual linear footage of partitioning on floor 7 is 1,018 linear feet. Based on the comparison of the 2,590 linear feet of typical partitioning assumed by the model to the 1,018 linear feet of actual partitioning on floor 7, the Court would conclude that the amount of partitioning on floor 7 is not typical of the model used to assess it. Therefore,

the State Board's final determination on this issue and REMANDS it to the Indiana Board.

## II. Grade

██ Sollers Pointe also contends that the State Board erroneously graded its property. Specifically, Sollers Pointe argues that its current grade of B+2 is excessive and that its grade should instead be C+1. The State Board argues that Sollers Pointe did not meet its prima facie burden because it did not present any evidence of similarly situated properties.[9]

Under Indiana's true tax value system, improvements are assigned various grades based on a building's design and the quality of its materials and workmanship. *See* Ind. Admin. Code tit. 50, rr. 2.2–1–30, 2.2–10–3 (1996). *See also Miller Structures*, 748 N.E.2d at 952. The grades, which range from A to E, represent multipliers that are applied to the base rate of an improvement.[10] 50 IAC 2.2–10–3; *Miller Structures*, 748 N.E.2d at 952. The C grade, which is the norm, is assigned when a building is "moderately attractive and constructed with average quality materials and workmanship." 50 IAC 2.2–10–3(a)(3); *see also* 50 IAC 2.2–10–3(b). A building with a C grade has "an average

quality interior finish with adequate built-ins, standard quality fixtures, and mechanical features." 50 IAC 2.2–10–3(a)(3). The B grade is given to buildings that are "architecturally attractive and constructed with good quality materials and workmanship. These buildings have a high quality interior finish with abundant built-in features, very good lighting and plumbing fixtures, and a custom heating and air conditioning system." 50 IAC 2.2–10–3(a)(2).

██ Intermediate grade levels may be assigned to a building to indicate that the building's grade falls between the major grade classifications. 50 IAC 2.2–10–3(c). A plus or minus two (+/–2) indicates that the grade falls halfway between the assigned grade classification and the grade immediately above or below it. 50 IAC 2.2–10–3(c)(1). A plus or minus one (+/–1) indicates that the grade falls "slightly above or below the assigned grade classification, or at a point approximately twenty-five percent (25%) of the interval between the assigned grade classification and the grade immediately above or below it." 50 IAC 2.2–10–3(c)(2). "[T]he determination of grade is subjective and involves a qualitative judgment[.]" *Clark*, 694 N.E.2d at 1236 (citation omitted).

this would be an alternative method for a taxpayer to show that it is entitled to an adjustment to its base rate for partitioning.

9. The State Board also stated that Sollers Pointe did not meet its burden because it did not provide any construction costs that would allow the State Board to make a calculation regarding the cost of the building. At the time of the State Board hearing, actual construction costs were generally not used because property was assessed according to State Board's regulations for determining true tax value, not market value. *See Dawkins v. State Bd. of Tax Comm'rs*, 659 N.E.2d 706, 709 (Ind. Tax Ct.1995); *Mahan v. State Bd. of Tax Comm'rs*, 622 N.E.2d 1058, 1063 (Ind. Tax Ct.1993) (citing Ind.Code § 6–1.1–

31–6(c)). The Court notes, however, that that proscription against using construction costs has now been modified. *See State Bd. of Tax Comm'rs v. Garcia*, 766 N.E.2d 341, 346–47 (Ind.2002) (finding that State Board's use of adjusted construction costs appropriate in determining grade factor above an "A").

10. The C grade is assigned a multiplier of 100% (i.e., 100% of the reproduction cost as determined under the State Board's regulations). See Ind. Admin. Code tit. 50, r. 2.2–10–3(b)(3); *King Indus. Corp. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 338, 340 n. 7 (Ind. Tax Ct.1998). The remaining multipliers are 160% for an A grade, 120% for a B grade, 80% for a D grade, and 40% for an E grade. 50 IAC 2.2–10–3(b).

The burden was on Sollers Pointe to submit probative evidence showing that the State Board either improperly gave its building a B+2 grade or improperly denied its building a C+1 grade.[11] *See Deer Creek*, 769 N.E.2d at 265–66. In examining the evidence presented at the administrative hearing, the Court determines that Sollers Pointe has not met its burden of presenting a prima facie case on grade. At the administrative hearing, Sollers Pointe presented the testimony of its tax representative, Rex Hume. Hume generally described the outside of the building and then stated what he *thought* about the interior finish. (*See* Amended Tr. at 97.) Hume also offered a chart in which he listed his conclusions about what he believed the grade should be for each individual floor, concluding that the building's overall grade should be C+1.[12] This testimony, however, amounts to nothing more than conclusory statements that Sollers Pointe's grade was incorrect.

In order for a taxpayer to meet his burden of establishing a prima facie case on grade, he needs to do more than merely offer conclusory statements. *See Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1119 (Ind. Tax Ct.1998), *review denied*. Instead, a taxpayer can offer "specific evidence tied to the descriptions of the various grade classifications."[13] *Id.* at 1119 n. 12. Of course, that "specific evidence" offered by the taxpayer to show that his improvement has certain grade characteristics must be *probative* evidence concerning the alleged error in grade. *See Id.* at 1119. Here, however, Sollers Pointe's evidence consisted of conclusory statements; thus, it was not probative.

Sollers Pointe nonetheless contends that it met its burden of showing an error in grade because Hume presented evidence that 14¼ floors out of 18 floors of its build-

11. Note, however, that a taxpayer who presents a grade issue to the Indiana Board after December 17, 2002, will be required to submit probative evidence of *"what* his grade should have been" in order to meet his prima facie burden. *See Clark v. Dep't of Local Gov't Fin.*, 779 N.E.2d 1277, 1282 (Ind. Tax Ct.2002) (emphasis in original).

12. Hume concluded that each floor should have the following grade assigned to it: office in basement-C+2; bank on floor 1-A; garage on floors 1–5–C; office on floor 6–B; offices on floors 7–16–C; and private club on floors 17–18–B+2. (Amended Tr. at 6.) Hume stated that the basement offices were "nicely finished, nothing outlandish, but nice." (Amended Tr. at 98.) He testified that the first floor bank lobby "is certainly above normal, above model, finish except for the ceiling[.]" (Amended Tr. at 98.) Hume also stated that the sixth floor office "has an expensively finished reception area[,]" is "designed to impress visitors[,]" has "a little more wood trim and some, a lot of glass in [the] office walls[,] and the carpet may be a little thicker than normal, but I'm not positive about that." (Amended Tr. at 99.) Hume

described the private club on floors 17–18 as having "fairly expensive finish and lighting features." (Amended Tr. at 6.)

13. The Court recognizes that it may be difficult to conclusively establish the characteristics used in the grade classifications due to their subjective nature. *See Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1119 n. 12; Ind. Admin. Code tit. 50, r. 2.2–10–3(a)(3). Nevertheless, a taxpayer is not "precluded from offering evidence tending to demonstrate that a given improvement has [the] characteristics" listed in the grade classifications. *Whitley Prods.*, 704 N.E.2d at 1119 n. 12. For example, Sollers Pointe could have identified or described specific instances where the State Board has given a similar or comparable building the grade Sollers Pointe seeks. *See Deer Creek Developers, Ltd. v. Dep't of Local Gov't Fin.*, 769 N.E.2d at 265–66 n. 10 (Ind. Tax Ct.2002) (citations omitted); *Aboite Corp. v. State Bd. of Tax Comm'rs*, 762 N.E.2d 254, 259 (Ind. Tax Ct.2001), *review denied; Fleet Supply, Inc. v. State Bd. of Tax Comm'rs*, 747 N.E.2d 645, 651 (Ind. Tax Ct.2001), review denied.

ing should have been assigned a C grade.[14] This evidence, however, consisted merely of Hume's conclusions that these floors should be a C grade. Because Hume's evidence did not provide an adequate explanation of why these floors should be assigned a C grade, it does not constitute probative evidence. *See Inland Steel*, 739 N.E.2d at 220 (finding that testimony from an appraisal expert, without explanation, is merely conclusory and lacks probative value); *Wirth v. State Bd. of Tax Comm'rs*, 613 N.E.2d 874, 878 (Ind. Tax Ct.1993) (finding expert witness' opinion regarding application of negative influence factor, without additional evidence, to be insufficient to overcome State Board's discretion).

The State Board determined that the grade of Sollers Pointe's building should be B+2. Sollers Pointe seems to be asking this Court to substitute its subjective determination of grade for that of the State Board. This the Court cannot do. *See Clark*, 694 N.E.2d at 1236 (holding that "[t]his Court affords subjective determinations made by the State Board a great deal of deference, and this Court will not substitute its judgment for that of the State Board"); *see also State Bd. of Tax Comm'rs v. Garcia*, 766 N.E.2d 341, 348 (Ind.2002). Sollers Pointe did not provide specific evidence that was probative as to the alleged error in grade; therefore, it did not make a prima facie case. Accordingly, this Court AFFIRMS the State Board's final determination on this issue.

## CONCLUSION

For the aforementioned reasons, the Court REVERSES the State Board's final determination on Issue I and REMANDS it to the Indiana Board with instructions to reduce the cost of partitioning per square foot of floor space. The Court, however, AFFIRMS the State Board's final determination on Issue II.

14. Hume proposed that the 4¼ floors of parking garage (floors 1–5) and the 10 floors of office space (floors 7–16) should receive a C grade. Hume testified that the garage was a "basic garage" and was "not particularly good, not particularly bad, but there's no reason to think of the parking floors as being graded at anything other than 'C'." (Amended Tr. at 6, 97.) Hume concluded that the offices on floors 7–16 were "basic office," and he stated that they had "no deviations that I can identify. Suspended acoustic tile ceilings, carpet on pad on the floors...." (Amended Tr. at 6, 99.)