Mark K. GRIDER and Jayne
M. Grider, Petitioners,

v.

DEPARTMENT OF LOCAL GOVERN-MENT FINANCE,[1] Respondent.

No. 49T10–0107–TA–56.

Tax Court of Indiana.

Dec. 11, 2003.

---

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the Legislature abolished the State Board as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the Legislature created the Department of Local Government Finance (DLGF) and the Indiana Board of Tax Review (Indiana Board). IND.CODE §§ 6–1.1–30–1.1 (West Supp.2003)(eff. 1–1–02); 6–1.5–1–3 (West.Supp.2003)(eff. 1–1–02); 2001 Ind. Acts 198 §§ 66, 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND.CODE § 6–1.5–5–8 (West Supp.2003)(eff. 1–1–02); 2001 Ind. Acts 198 § 95. Moreover, the law in effect prior to January 1, 2002 applies to these appeals. I.C. § 6–1.5–5–8. See also 2001 Ind. Acts 198 § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

G. John Cento, Thomas M. Atherton, Katz & Korin, PC, Indianapolis, IN, Attorney for Petitioners.

Steve Carter, Attorney General of Indiana, Laureanne Nordstrom, Deputy Attorney General, Indianapolis, IN, Attorney for Respondent.

FISHER, J.

Mark K. Grider and Jayne M. Grider (the Griders) appeal the final determination of the State Board of Tax Commissioners (State Board) valuing their real property for the March 1, 1998 assessment date. The sole issue for the Court to decide is whether the State Board erred in assigning an "A" grade to the Griders' home.

## FACTS AND PROCEDURAL HISTORY

In 1997, the Griders designed and built a 3,900 square foot brick home in Hamilton County, Indiana in which to showcase their extensive collection of antique furnishings. The exterior of the Griders' home was designed to resemble a 19th century stable. The interior of the home was designed without decorative molding, door or window frames, closets, carpeting or built-in cupboards—all things the Griders believed might detract attention from their antique collection.

For the 1998 assessment date, the local assessing officials assigned the Griders' home a grade factor of "A + 2." Displeased with this grade, the Griders challenged the assessment with the Hamilton County Property Tax Assessment Board of Appeals (PTABOA). The PTABOA reduced the grade factor to an "A."

Still believing the grade factor to be too high, the Griders filed a Petition for Review of Assessment (Form 131) with the State Board on August 13, 1999. Following an administrative hearing, the State Board issued a final determination on the Griders' Form 131 in which it affirmed the PTABOA's decision.

The Griders initiated an original tax appeal on July 6, 2001. Trial was held on February 4, 2002. The Court heard the parties' oral arguments on August 9, 2002. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

This Court gives great deference to the final determinations of the State Board when it acts within the scope of its authority. *Thousand Trails, Inc. v. State Bd. of Tax Comm'rs*, 757 N.E.2d 1072, 1075 (Ind. Tax Ct.2001). Thus, the Court will reverse a final determination of the State Board when it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

Ind.Code § 33–3–5–14.1 (West Supp.2003) (eff. 7–1–01).

## DISCUSSION

The Griders claim that the State Board erroneously graded their home. Specifically, they argue that the home's current grade factor of "A" is excessive and that the grade should be "C + 2." (Petrs' Pet. to Appeal Final Determination at 2.)

Under Indiana's true tax value system, residential dwellings are assigned various grades based on their design, quality of workmanship, and quality of materials used in their construction. *See* IND. ADMIN. CODE tit. 50, r. 2.2–7–6(c) (1996). For instance, the State Board's assessment regulations describe an "A" grade dwelling as one of "outstanding architectural style. The design, craftsmanship, and materials are of exceptionally high quality. The detail and ornamentation are aesthetically appealing." IND. ADMIN. CODE tit. 50, r. 2.2–7–6(d)(1) (1996). Consequently, the features of an "A" grade dwelling might include:

[1] Numerous cuts, angles, or unusual shapes in the wall outline.

[2] Several different roof lines or angles.

[3] Generous to extreme roof pitch.

[4] Generous to extreme roof overhangs.

[5] Superior quality interior finish, including floor and wall coverings, doors, windows, woodwork, and cabinetry.

[6] Numerous built-in features.

[7] High grade lighting and plumbing fixtures.

[8] Deluxe climate control system.

[9] Architecturally designed.

*Id.* In contrast, a "C" grade dwelling is "moderately attractive ... constructed with average quality materials and workmanship[.]" IND. ADMIN. CODE tit. 50, r. 2.2–7–6(d)(3) (1996). Thus, the features of a "C" grade dwelling might include:

[1] Simple wall outline.

[2] Simple roof lines.

[3] Normal roof pitch.

[4] Normal roof overhang.

[5] Average quality finish, including floor and wall coverings, doors, windows, woodwork, and cabinetry.

[6] Adequate number of built-in features.

[7] Average quality lighting and plumbing fixtures.

[8] Average climate control system.

[9] Typical subdivision homes with limited available number of models with various options available from a developer or homes in a typical multifamily residential complex.

*Id.*

The party challenging the propriety of a State Board final determination bears the burden of demonstrating its invalidity. *Thousand Trails,* 757 N.E.2d at 1075. Consequently, the Griders bore the burden to submit probative evidence showing that the State Board either improperly

gave their home an "A" grade or improperly denied their home a "C+2" grade. *See Deer Creek Developers, Ltd. v. Dep't of Local Gov't Fin.*, 769 N.E.2d 259, 265–66 (Ind. Tax Ct.2002). At the administrative hearing, the Griders submitted the following evidence: 1) fifteen photographs, depicting both the home's exterior and interior; and 2) a photocopy of a record card on an allegedly comparable property. In addition, the Griders testified as to the following features of their home:

*Foundation:* "[s]imple poured concrete wall, 4–inch slab in the basement crawl area, more of a concrete."

*Stories:* "it's been referred to by the assessors as one and ¾."

*Structural flooring:* "2x10 single beam set on a 4″ slab[.]"

*Exterior walls:* "[s]tandard studs in the wall, brick veneer."

*Windows:* "wood casement windows."

*Doors:* wood doors. "Those are not new doors; those have been collected from salvage yards in the Midwest. My wife designed the house to fit the doors."

*Roof:* "[s]traightforward in design. [A] couple of angles and wood shake shingles. 2x6 [rafters].... There's copper flashings. There are no gutters on this home."

*Garage:* "[i]t does not have a garage. Attached or separate."

*Interior finish:* "drywall with two coats of paint. Standard drywall,½. No baseboards, no molding of any type. No chair rails. We have no built-ins. No built in closets."

*Plumbing and Lighting Fixtures:* "plumbing is ... retrieved from salvage

yards around the Midwest. There is standard PVC tubing, plastic tubing which is hooking them up, there is also with regards to light fixtures, again a collection of salvage yards." Inexpensive.

(Cert. Admin. R. at 77–83.) The Griders assert that their testimony, when considered in light of the State Board's grade specification chart, *see* 50 IAC 2.2–7–6, indicates that their home has numerous features of "B" grade, "C" grade, as well as even "D" grade, homes. (*See* Cert. Admin. R. at 105.) Accordingly, the Griders contend that their home's appropriate grade could not possibly be an "A." (*See* Cert. Admin. R. at 106.)

The Griders have presented probative evidence supporting their position on grade. *See Sollers Pointe Co. v. Dep't of Local Gov't Fin.*, 790 N.E.2d 185, 191 (Ind. Tax Ct.2003) (stating that to make a prima facie case on grade, a taxpayer can offer "specific evidence tied to the descriptions of the various grade classifications"). Thus, it is incumbent on the State Board to rebut the Griders' evidence and to come forward with probative evidence that would substantiate the application of an "A" grade. *Cf. Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1119–20 (Ind. Tax Ct.1998) (stating that when taxpayers fail to provide the State Board with probative evidence supporting their position on a grade issue, the State Board's duty to support its final determination with substantial evidence is not triggered), *review denied.* Accordingly, the State Board argues that while it recognizes that the Griders' home does not have certain features that are attributable to an "A" grade home (i.e., decorative moldings, gutters), the home does have certain other features that justify the ap-

plication of an "A" grade. In denying the Griders' claim, the State Board relied on the testimony of the local assessing officials:

both sides agree that the house i[s] unique in its design and its construction.... In picking the grade ... we compared the Grider's home to what is found in average [i.e., a "C" grade].... The physical construction of the house is very solid[,] exceeding what would normally be found in average construction.

* * * * *

[T]he brick work [g]oes [ ] to the peaks of the house, there are four peaks, on the house ... We also noticed that the roof, and for a lack of better term, that the roofline would appear similar to a parapet on a commercial building. The roofline extends past the roof and this is also capped with limestone trim, once again we do not have a value or a way to account for that and that would be on all four peaks of the roof as well. Going to the roof pitch, it indicates that there is a 10/12 and a 12/12 pitch on the home, the average construction has closer to a 4/12 roof pitch, this would far exceed what an average home will have in the State of Indiana. The roofline is somewhat simple, yet it is, I would call it a multi-gable roof, and there is more than one roofline on the top of the house. The walls are framed with 2x6's instead of 2x4's, which once again would be found in average construction. And ... [t]he wood shake roof is also normally considered an upgrade versus asphalt shingles. Casement windows versus single hung or double hung windows. Copper flashing versus aluminum. The floors are being framed with 2x10's and the [blue]prints show that they were various from 12″ on

center to 16″ on center and so we're hovering between I guess the A and B grade if you were looking at that grade specification table. Also on the front of the house, it is true the house has no gutter ... it does have however a 2′ overhang ... normal average construction is 4–6″. 2′ is definitely above what is considered average.

* * * * *

We assess a chimney stack and an opening, and if you would go out to a C grade home today, the stack and chimney would normally measure 3X5 and this particular fireplace has an outside fireplace or barbeque pit ... nine feet wide by about its looks like it's five, six feet from one side to the other.

* * * * *

I believe ... granite or slate or marble or hard surface was used for the kitchen counter tops and the work areas.

* * * * *

[With respect to the salvaged tub, by the fact that i]ts that old and still usable, I would say it[']s superior quality.

(Cert. Admin. R. at 84–89, 99.)

■■■ In essence, this case involves a difference in opinions—the Griders invite this Court to substitute its subjective determination of grade for that of the State Board. The Court declines the invitation. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1236 (Ind. Tax Ct.1998). Rather, the Court can only review the administrative record to determine whether there is substantial evidence to support the State Board's final determination. A State Board final determination is sup-

ported with substantial evidence [2] if a reasonable person could view the record in its entirety and find enough relevant evidence to support the State Board's determination. *Amax Inc. Through Amax Coal Co. v. State Bd. of Tax Comm'rs,* 552 N.E.2d 850, 852 (Ind. Tax Ct.1990) (footnote added). Based on the evidence contained in the administrative record, it is clear to this Court that the State Board presented substantial evidence to support its determination that an "A" grade was properly assigned to the Griders' home.

2. "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Amax Inc. Through Amax Coal Co. v. State Bd. of Tax Comm'rs,* 552 N.E.2d 850, 852 (Ind. Tax Ct.1990) (cit-

## CONCLUSION

For all the foregoing reasons, this Court AFFIRMS the final determination of the State Board.

ing *South Shore Marina, Inc. v. State Bd. of Tax Comm'rs,* 527 N.E.2d 738, 742 (Ind. Tax Ct.1988)).