◼ In the Matter of PCK DEVELOPMENT COMPANY, LLC, Appellant-Respondent, v ASSESSOR OF THE TOWN OF ULSTER et al., Respondents-Appellants. (And Two Other Related Proceedings.) [798 NYS2d 203]—

Mugglin, J. Cross appeals from a judgment of the Supreme Court (Kavanagh, J.), entered April 12, 2004 in Ulster County, which partially granted petitioner's applications, in three proceedings pursuant to RPTL article 7, to reduce tax assessments on certain real property owned by petitioner.

Petitioner is the owner of the Hudson Valley Mall, a large regional shopping center located in the Town of Ulster, Ulster County. By means of RPTL article 7 proceedings, petitioner challenges respondents' assessment of its property of $79,800,000 for the year 1999, a similar assessment for 2000 and an assessment of $80 million for 2001. At trial, petitioner's appraiser testified that the value of the property ranged from $49,650,000 in 1999 to $54,600,000 in 2001. Respondents' appraiser testified that the value of the property was $79,850,000 in 1999, $85,750,000 in 2000 and $83,800,000 in 2001. Supreme Court essentially found that respondents' appraisals were the more accurate with one adjustment, that being a deduction in excess of $7 million from respondents' appraisals computed by dividing $885,000 in annual tenant concessions costs by the capitalization rate. Thus, Supreme Court concluded that the appropriate assessment was $72,725,000 for 1999, $78,500,000 for 2000, and $76,675,000 for 2001. Petitioner appeals and respondents cross-appeal.

We first address the cross appeal since it is evident that respondents are not aggrieved by Supreme Court's judgment unless it was error to capitalize $885,000 annually in tenant concession expenses. Respondents' argument in this respect is only that the record does not support the court's finding of $885,000 in such expenses. We disagree. Petitioner has shown that a number of leases in its shopping mall provide for such tenant concessions either in the form of rent abatement or credit for remodeling costs and that the $885,000 is a reasonable expense based on a five-year average of such costs.

Turning to petitioner's four appellate arguments, we find only one has merit. Respondents' appraiser separately valued a 10-acre portion of petitioner's parking lot at $2,950,000 and

added this to the total value for the years 1999 and 2000. Respondents' theory was that this was excess property, not needed for the operation of petitioner's mall and its highest and best use was for development by expanding the mall. Most of this property was, in fact, sublet to Target Stores in 2001 and separately assessed and, therefore, is not relevant to this appeal for that tax year. Supreme Court agreed with respondents' appraiser. In so doing, Supreme Court overlooked the rule that in tax assessment proceedings, " 'value is to be determined on the basis of the condition of the subject property according to its state on the taxable status date, not on the basis of some use contemplated in the future' " (*Matter of Stonegate Family Holdings v Board of Assessors of Town of Long Lake*, 222 AD2d 997, 998 [1995], *lv denied* 92 NY2d 817 [1998], quoting *Matter of General Motors Corp. Cent. Foundry Div. v Assessor of Town of Massena*, 146 AD2d 851, 852 [1989], *lv denied* 74 NY2d 604 [1989]). Thus, this sum should be subtracted from the assessed value found by Supreme Court for the years 1999 and 2000.

The parties to this proceeding recognized that the capitalization of income method of appraisal would yield the most accurate results and both appraisers relied on this method as the primary means of determining fair market value. The major area of disagreement between the appraisers was the treatment of real estate taxes in computing income. These taxes are annually paid by petitioner who is then reimbursed by its tenants. In calculating gross income, respondents included all such payments received by petitioner from its tenants. Notably, these payments exceeded $4 per square foot for the three years in question. Petitioner, based on a market analysis, concluded that, had the property been properly assessed, the tenants would have paid $2.50 per square foot for taxes. Thus, he substituted that figure for the actual payments, resulting in a reduction in petitioner's income of more than $1 million.

Both appraisers agreed that it was improper to simply set off taxes received by way of reimbursement against taxes paid to the collector and that use of the "assessor's formula" is appropriate.* Petitioner's argument is that, since the property is already overassessed, including all of the tax reimbursement in petitioner's income distorts this figure, unfairly inflating the

---

* This factor for computing an appropriate real estate tax expense is derived by multiplying the tax rate per thousand by the tax equalization rate and dividing the result by 1,000. This factor for taxes is then added to the capitalization rate and, when divided into the net income, accounts for the tax expense based on the value of the property as indicated by the capitalization of income approach (*see Matter of Senpike Mall Co. v Assessor of Town of New Hartford*, 136 AD2d 19, 22 n [1988]).

computation of the property's fair market value, and Supreme Court erred in accepting respondents' appraiser's calculation of value. We disagree. Respondents' appraiser, in determining net income, accounted for the inclusion of actual tax recoveries by applying "an equalized tax rate adjustment . . . to the selected overall capitalization rate" (emphasis omitted). We find no error in Supreme Court finding that this methodology produced a more accurate appraisal of value than did petitioner's methodology, which reduced income by relying on a market analysis which found little support in fact.

Lastly, we have thoroughly examined the remaining arguments made by petitioner and respondents and find none that merit further modification of Supreme Court's judgment.

Crew III, J.P., Peters, Rose and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reducing the assessed value in 1999 from $72,725,000 to $69,775,000 and by reducing the assessed value in 2000 from $78,500,000 to $75,550,000, and, as so modified, affirmed.