**MILLENNIUM REAL ESTATE IN-VESTMENT, LLC, an Indiana Limited Liability Company, Petitioner,**

v.

**ASSESSOR, BENTON COUNTY, Indiana, Respondent.**

No. 49T10–1008–TA–42.

Tax Court of Indiana.

Nov. 5, 2012.

Jerome L. Withered, Withered Burns & Persin, LLP, Lafayette, IN, Attorney for Petitioner.

Marilyn S. Meighen, Meighen & Associates, P.C., Carmel, IN, Attorney for Respondent.

FISHER, Senior Judge.

Millennium Real Estate Investment, LLC appeals the final determination of the Indiana Board of Tax Review upholding the assessments of its real property for the 2008 tax year. The Court affirms.

## FACTS AND PROCEDURAL HISTORY

Millennium owns three parcels of land in Boswell, Indiana, consisting of approximately twenty-one and a half acres and containing an industrial building and three Quonset storage buildings. For the 2008 tax year, the Benton County Assessor assigned Millennium's property a total assessed value of $639,800 ($230,800 for land and $409,000 for improvements).

Millennium believed the assessments were too high and, therefore, sought review first with the Benton County Property Tax Assessment Board of Appeals and then with the Indiana Board. On April 7, 2010, the Indiana Board held a hearing during which Millennium offered the testimony of its managing partner, Gene McGowen, and an appraisal, completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP). Millennium's Appraisal estimated the value of its property at $325,000 as of March 1, 2008, and stated that the property was sold in December 2003 for $182,000. Millennium also presented an Asset Purchase Agreement, which provided that it purchased its property for $193,817 on June 30, 2008. In contrast, the Assessor presented an appraisal, also completed in conformance with USPAP, which valued the property at $640,000 as of January 10,

2007.[1],[2] On July 6, 2010, the Indiana Board issued its final determination upholding Millennium's assessments.

On August 16, 2010, Millennium initiated this original tax appeal. The Court heard oral argument on February 18, 2011. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. *Hubler Realty Co. v. Hendricks Cnty. Assessor*, 938 N.E.2d 311, 313 (Ind. Tax Ct.2010) (citation omitted). Consequently, Millennium must demonstrate to the Court that the Indiana Board's final determination is, for example, arbitrary, capricious, or unsupported by substantial evidence. *See* IND.CODE § 33–26–6–6(e)(1), (5) (2012).

## ANALYSIS

On appeal, Millennium asserts that the Indiana Board's final determination is incorrect for two main reasons. First, Millennium claims that the Indiana Board simply ignored its December 2003 sales evidence and improperly discounted its June 2008 sales evidence. Millennium also claims that the Indiana Board erred in assigning greater weight to the Assessor's Appraisal. The Court will address these claims in turn.

## I.

Millennium asserts that the Indiana Board erred in ignoring its December 2003 sales evidence and in discounting its June 2008 sales evidence because that evidence showed that its parcels were recently sold, in two separate arm's length transactions, for well below their collective assessed values. (*See* Pet'r Br. at 9–11.) Therefore, explains Millennium, the sales evidence indicated that its assessments were incorrect. The Court disagrees.

When a taxpayer offers probative evidence to support its case during an Indiana Board hearing, the Indiana Board must deal with that evidence in some meaningful manner. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1235 (Ind. Tax Ct.1998). Probative evidence is "evidence sufficient to establish a given fact that, if not contradicted, will remain sufficient." *Meadowbrook N. Apts. v. Conner*, 854 N.E.2d 950, 953 (Ind. Tax Ct.2005) (citation omitted). The December 2003 sales evidence, which was contained within the Assessor's Appraisal, stated:

> The [parcels] ha[ve] been under the ownership of Richard Robinson or related entities since 1996. In December 2003, title to the [parcels] was transferred from Ralph Richard Robinson, an undivided 90/100th interest and James B. Freeland, an undivided 10/100th interest to the current owner, Robinson Family Enterprises, LLC. At that time, the undivided 10 percent interest of James B. Freeland was acquired in both the subject [parcels] *and another 38,688 square foot industrial property located at 5174 East Main Street (County Road 894 South) in Foresman, Indiana. The price for the acquisition of this interest in both properties is reported by Dick Robinson to be $182,000.00.*

(Cert. Admin. R. at 237 (emphasis added).) This evidence simply is not probative in

---

1. The Assessor's Appraisal was prepared by a third party for financing purposes in December 2006. (*See* Cert. Admin. R. at 235, 298.)

2. It appears that neither of the Appraisals valued all three of Millennium's parcels; nonetheless, because the Indiana Board appears to have assumed otherwise, so shall this Court. (*See* Cert. Admin. R. at 157, 218–19, 232.)

demonstrating that Millennium's 2008 assessments are incorrect for several reasons.

■ First, this evidence establishes that the subject parcels *and* another property sold for $182,000, providing no indication of the individual value of either property. Next, there is no explanation as to how the December 2003 sales price relates to the effective valuation date for a 2008 assessment (*i.e.*, January 1, 2007). *See* 50 IND. ADMIN. CODE 21-3-3(a)-(b) (2008) (see http://www.in.gov/legislative/iac/) (repealed 2010); *see also, e.g., Big Foot Stores LLC v. Franklin Twp. Assessor,* 919 N.E.2d 621, 625-26 (Ind. Tax Ct.2009). Furthermore, the arm's length nature of the sale is questionable because at least two of the parties to the transaction appear to be related. *See, e.g., Austin v. Indiana Family & Soc. Srvs. Admin.,* 947 N.E.2d 979, 985 (Ind.Ct.App.2011) (stating an arm's length transaction "refers to dealings between two parties who are not related and not in a confidential relationship, and who are presumed to have roughly equal bargaining power") (citation omitted). Accordingly, the Court finds that Millennium has not shown that the Indiana Board erred with respect to its December 2003 sales evidence claim.

■ Similarly, Millennium's June 2008 sales evidence does not probatively demonstrate that its 2008 assessments are incorrect. Indeed, during the administrative hearing, McGowen repeatedly testified that the seller, an acquaintance, was experiencing financial difficulties, that he had not been able to sell or refinance the property for over two years, and that his lender was threatening foreclosure. (*See* Cert. Admin. R. at 329-32, 337-55.) McGowen also testified that he perceived the $193,817 purchase price to be "a deal," and that he considered the transaction to be at arm's length despite the fact that he indicated otherwise on the sales disclosure form. (*Cf.* Cert. Admin. R. at 300-03 (indicating that the sale was a "compulsory transaction as a result of foreclosure or express threat of foreclosure, divorce, court order, judgment, condemnation, or probate") *with* 354-62.) In turn, the record evidence did not indicate that foreclosures or similar sales were the norm for this type of property. *See, e.g., Lake Cnty. Assessor v. U.S. Steel Corp.,* 901 N.E.2d 85, 91-92 (Ind. Tax Ct.2009) (explaining when bankruptcy sales can be indicative of a property's assessed value), *review denied.* Moreover, Millennium's Appraisal, which valued the parcels at $325,000, even stated that the June 2008 sale "appear[ed] to be at below market rates[.]" (Cert. Admin. R. at 157, 160.) Therefore, the Indiana Board's conclusion that the June 2008 sales evidence lacked probative value was not arbitrary, capricious, or unsupported by substantial evidence.

## II.

The next issue before the Court is whether the Indiana Board erred in assigning greater weight to the Assessor's Appraisal. The Court will address Millennium's specific claims in turn.

## A.

■ First, Millennium asserts that the Indiana Board erred in assigning more weight to the Assessor's Appraisal because it used the "wrong" standard in estimating the value of the subject property. (*See* Pet'r Br. 11-12.) Millennium explains that in Indiana, the assessed value of real property is based on its value in-use, not its fair market value. (*See* Oral Argument Tr. at 3-9, 25-28.) Consequently, Millennium maintains that the Indiana Board should have completely rejected the Assessor's Appraisal, given its fair market value esti-

mation. The Court, however, must disagree.

While Indiana assesses real property on the basis of its market value-in-use, this does not mean that a subject property's assessed value and its market value[3] will never coincide. *See* IND.CODE § 6–1.1–31–6(c) (2008); 2002 Real Property Assessment Manual (2004 Reprint) (Manual) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 2 (footnote added). For instance, when a property's current use is consistent with its highest and best use, and there are regular exchanges within its market so that ask and offer prices converge, a property's market value-in-use will equal its market value because the sales price fully captures the property's utility. *See* Manual at 2. On the other hand, when a property's current use is inconsistent with its highest and best use, then market value-in-use will not equal market value because the sales price will not reflect the property's utility. *See id.*

Here, both Appraisals provide that the current industrial use of Millennium's property is consistent with its highest and best use as improved. (Cert. Admin. R. at 160, 260–62.) Consequently, without anything more, the Court cannot say that the Assessor's Appraisal utilized an improper assessment standard in estimating the value of Millennium's property. Accordingly, the Court concludes that the Indiana Board did not err in assigning greater weight to the Assessor's Appraisal with respect to this claim.

## B.

■ Next, Millennium argues that because the Assessor's Appraisal "was procured so that the owners could obtain financing[,]" its estimate of value probably was overstated. (*See* Pet'r Reply Br. at 2, 4; Pet'r Br. at 12.) Millennium therefore argues that the Indiana Board should have found that its Appraisal better reflected the value of its property. The Court finds Millennium's argument unpersuasive.

■ At the outset, the fact that the Assessor's Appraisal was commissioned for refinancing purposes may go to the weight of the evidence, but it has no bearing on its admissibility and, therefore, does not suggest in and of itself that the estimate of value therein is inflated. This is especially the case when, like here, an appraiser provides an unrebutted written certification as to his impartiality and further certifies that his engagement and compensation were not related to any type of contingent fee arrangement or the production of some predetermined result. (*See* Cert. Admin. R. at 227.) *But see Wirth v. State Bd. of Tax Comm'rs*, 613 N.E.2d 874, 877 (Ind. Tax Ct.1993) (explaining that "the contingent nature of an expert witness's fee goes to the weight, not the admissibility, of the expert's testimony").

■ Nevertheless, in certain instances, an appraisal prepared for financing purposes may not provide an accurate estimation of a property's value for *ad valorem*

---

**3.** For purposes of assessment, Indiana defines "market value" as:

The most probable price (in terms of money) which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under [certain] conditions[.]

2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (Manual) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 10.

tax purposes. More specifically, when an appraiser applies the income approach, he may deduct property taxes as an expense because real estate taxes ordinarily are the owner's responsibility. *See, e.g., Matter of Senpike Mall Co. v. Assessor of Town of New Hartford,* 136 A.D.2d 19, 22–23, 525 N.Y.S.2d 104 (1988). When valuing property for *ad valorem* tax purposes, however, the use of that methodology distorts the final estimate of value.[4] *See id.* (footnote added). In this case, the Assessor's income approach accounted for property taxes in the development of potential gross income; it did not deduct property taxes as an expense. (*See* Cert. Admin. R. at 273–75.) On the other hand, Millennium's income approach deducted property taxes as an expense and, therefore, likely distorted the value of subject property. (*See* Cert. Admin. R. 163.) Consequently, the Court finds that the Indiana Board also did not err in considering and assigning greater weight to the Assessor's Appraisal with respect to this claim.

## C.

Lastly, Millennium asserts that the sales comparison and income approaches contained in the Assessor's Appraisal were unreliable because each rated the condition of its improvements as "average," when a rating of poor would have been more appropriate and neither accounted for functional obsolescence.[5] (*See* Pet'r Br. at 13, 15–16, 18 (footnote added).) Millennium also discounts the Assessor's income approach because it used four comparables located miles away from its property in estimating its value. (*See* Pet'r Br. at 13.) Millennium maintains that the compounding effect of these errors ultimately led to the difference between the two Appraisals' valuations, and the Indiana Board erred in failing to address those errors in its final determination.[6] (*See* Pet'r Br. at 13–14, 18 (footnote added).)

The valuation of property is a formulation of an opinion, not an exact science. *Stinson v. Trimas Fasteners, Inc.,* 923 N.E.2d 496, 502 (Ind. Tax Ct.2010). For example, in this case, the determination of condition ratings, selection of comparables, and formulation of vacancy/collection loss rates, among other things, are all factors the parties' appraisers used to develop their opinions of value. Moreover, because the sales comparison and income approaches account for functional obsolescence implicitly rather than explic-

---

**4.** *See also, e.g., General Electric Co. v. Board of Assessors of Lynn,* 393 Mass. 591, 472 N.E.2d 1329, 1341–42 (1984); *Alstores Realty Corp. v. Board of Assessors of Peabody,* 391 Mass. 60, 460 N.E.2d 1276, 1282 (1984); *Humble Oil & Refining Co. v. Borough of Englewood Cliffs,* 71 N.J. 401, 365 A.2d 929, 931 (1976); *City of New Brunswick v. State of N.J. Div. of Tax Appeals,* 39 N.J. 537, 189 A.2d 702, 706–07 (1963); *RTC Props. v. Town of Kearny,* 13 N.J.Tax 146, 156–57 (N.J. Tax Ct.1993); International Ass'n of Assessing Officers, Property Assessment Valuation 240 (2nd ed. 1996).

**5.** An improvement's condition rating reflects its "wear and tear" relative to its age, including the degree of maintenance and modernization to the improvement. *See* Real Proper-

ty Assessment Guidelines For 2002–Version A (2004 Reprint) (incorporated by reference at 50 I.A.C. 2.3–1–2(c)), Bk. 2, App. F at 23. In turn, functional obsolescence is a loss of value caused by an improvement's *internal* inutilities, such as design defects or the need for modernization. *See id.* at 4.

**6.** Millennium also suggests that the Assessor's Appraisal used an improper vacancy/collection loss rate, resulting in a value estimate significantly higher than its own. (*See* Pet'r Br. at 14.) A closer examination of the each Appraisal, however, indicates that the formulations of total expenses and accounting for property taxes most likely led to their differing valuations. (*Cf.* Cert. Admin. R. at 163–64 *with* 275–78.)

itly, it is impossible to discern, without something more, the extent of a property's loss of value. *See, e.g., New Cumberland Corp. v. Borough of Roselle,* 3 N.J.Tax 345, 352 (N.J. Tax Ct.1981) (stating that functional or economic obsolescence is only revealed when cost approach valuations are compared with market or income approach valuations); *Department of Revenue v. Grant W. Lumber Co.,* 15 Or. Tax 258, 270 (Or. Tax Ct.2000) (noting that while the sales comparison and income approaches inherently reflect all forms of obsolescence; the cost approach explicitly reflects functional obsolescence). Therefore, "[w]hen there are competing opinions as to how a property should be valued, the Indiana Board must determine which opinion is more probative." *Trimas,* 923 N.E.2d at 502. Once the Indiana Board makes such a determination, this Court will not substitute its judgment for that of the Indiana Board simply because it or, like here, one of the parties disagrees with the Indiana Board's decision. *See Grider v. Dep't of Local Gov't Fin.,* 799 N.E.2d 1239, 1243 (Ind. Tax Ct.2003). In other words, Millennium's sales comparison and income approach arguments merely invite this Court to reweigh the evidence; that task, however-

er, is not within this Court's prerogative on appeal absent an abuse of discretion. *See Trimas,* 923 N.E.2d at 498–99; *Hubler,* 938 N.E.2d at 315 n. 5 (defining "an abuse of discretion"). The Indiana Board's final determination explains why it found the Assessor's Appraisal to be more persuasive than Millennium's, and based on its review of the administrative record, the Court finds no basis for reversing the Indiana Board's conclusion.[7] Therefore, the Court holds that the Indiana Board did not abuse its discretion in finding the Assessor's Appraisal more persuasive than Millennium's Appraisal despite their differences.

## CONCLUSION

The Indiana Board's final determination was neither arbitrary nor capricious; rather, it was supported by substantial and reliable evidence. Accordingly, the final determination of the Indiana Board is AFFIRMED.

7. The Indiana Board also concluded that the Assessor's Appraisal was more persuasive than Millennium's Appraisal because the Assessor's Appraisal indicated that the property was inspected within a month of the relevant valuation date whereas Millennium's Appraisal provided that the property was inspected over three years later. (*See* Cert. Admin. R. at

108–09.) That conclusion was erroneous: absent a showing of some relevant physical change in a property, the date upon which a property inspection occurs has no bearing on the probative value of an appraisal. Nevertheless, the Court finds the error is harmless, given the totality of the record evidence and the Indiana Board's conclusions thereto.